921 F.2d 306
 287 U.S.App.D.C. 266
 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
Paul D. BERKSTRESSER, Respondent,
Washington Metropolitan Area Transit Authority, Intervenor.
 No. 89-1473.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 5, 1990.
Decided Dec. 11, 1990.
As Amended Feb. 21, 1991.
 
 Joshua T. Gillelan, II, Washington, D.C., for petitioner. Carol A. De Deo, Associate Solicitor, J. Michael O'Neill, Counsel, for Longshore, and Marianne Demetral Smith, Washington, D.C., Atty., Dept. of Labor, were on the brief, for petitioner. Janet R. Dunlop, Washington, D.C., also entered an appearance, for petitioner.
 John F. Ward, Washington, D.C., for intervenor.
 Robert B. Adams, Washington, D.C., entered an appearance, for respondent.
 Before WALD, Chief Judge, D.H. GINSBURG and RANDOLPH, Circuit Judges.
 Opinion for the Court filed by Chief Judge WALD.
 WALD, Chief Judge:
 
 
 1
 The Director of the Office of Workers' Compensation Programs seeks review of an Order of the Benefits Review Board on two grounds. First, the Director contends that the Board erred in reversing the determination of an administrative law judge ("ALJ") that intervenor-employer Washington Metropolitan Area Transit Authority ("WMATA") was not eligible for relief under the so-called "second-injury" provision of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 908(f). Second, the Director challenges the Board's affirmance of the ALJ's determination that claimant Berkstresser was not eligible for permanent total disability benefits between the time of his maximum medical improvement and the demonstration of available appropriate employment. Upon review of the record and the relevant law, we reverse the Board's order and remand for further proceedings.
 
 I. BACKGROUND
 
 2
 Paul Berkstresser was injured in a car accident in 1973; X-rays and an attendant medical evaluation prepared at that time reported a "minimal degree of degenerati[on] of [the] lower lumbar spine." This condition was asymptomatic; indeed, several years later, Berkstresser had apparently forgotten about the injury. On January 11, 1978, Berkstresser was injured again, this time by a fall on the job; his injury prevented him from returning to his position as a bus driver for intervenor-employer WMATA.
 
 
 3
 Berkstresser then filed a claim against WMATA for disability benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Secs. 901 et seq.[1] The ALJ held a hearing; two of his determinations are at issue here. First, the ALJ found that WMATA's liability for benefits was not limited by Sec. 8(f) of the Longshore Act. Section 8(f), set forth in the margin,[2] limits employer liability in cases in which an employee with a pre-existing disability suffers an additional injury.[3] To qualify for Sec. 8(f) relief, an employer must make a three-part showing (i) that the employee had a pre-existing partial disability, (ii) that this partial disability was manifest to the employer, and (iii) that it rendered the second injury more serious than it otherwise would have been. See, e.g., Director, Office of Workers' Compensation Programs v. Potomac Electric Power Co., 607 F.2d 1378, 1382 (D.C.Cir.1979). Reviewing Berkstresser's claim, the ALJ found that as of 1978 Berkstresser did have a pre-existing permanent partial disability; that, however, Berkstresser's underlying condition was not manifest to WMATA based on the 1973 medical evidence; and that the pre-existing disability contributed to the severity of the second injury. Accordingly, the ALJ concluded that, because WMATA had failed to fulfill the "manifest" requirement, it was not eligible for Sec. 8(f) relief.
 
 
 4
 The ALJ also determined that Berkstresser was eligible for temporary total disability benefits from the date of his second injury (January 11, 1978) until the date of his "maximum medical improvement" (August 4, 1978) and for permanent partial disability benefits thereafter. This determination was based on the ALJ's judgment that WMATA had "show[n] that realistic job opportunities were available" at the time of Berkstresser's maximum medical improvement.
 
 
 5
 On review, the Benefits Review Board vacated the ALJ's finding of Sec. 8(f) ineligibility, holding that the ALJ applied the wrong legal standard of "manifestness." The Board contended that
 
 
 6
 the medical records of the pre-existing condition do not necessarily have to indicate its severity in order for it to be manifest or objectively determinable. Where knowledge of claimant's prior back injury could be obtained from existing medical records, the Board has held that the injury was manifest.
 
 
 7
 Berkstresser v. WMATA, 16 Ben.Rev.Bd.Serv. 231, 235 (1984). The Board affirmed the ALJ's assessment of the date of the commencement of Berkstresser's permanent partial disability as the date of maximum medical improvement, stating that
 
 
 8
 [i]t was reasonable [for the ALJ] to conclude that claimant became partially rather than totally disabled once he reached maximum medical improvement and no longer received treatment, regardless of the date the employer first presented evidence of available alternative employment.
 
 
 9
 16 Ben.Rev.Bd.Serv. at 234.
 
 
 10
 On remand, the ALJ clarified that he had in fact found that Berkstresser did not suffer from a disability or degenerative condition in 1973 and that the Board's suggestion that he had found a disability of unknown severity was incorrect. The Board again reversed, ruling that, in the initial hearing, the ALJ had already determined Berkstresser to have a pre-existing disability,[4] that that disability was manifest, and accordingly that WMATA was entitled to a Sec. 8(f) limitation on liability. 22 Ben.Rev.Bd.Serv. 280 (1989). The Director petitions for review of the Board's Order.
 
 II. ANALYSIS
 
 11
 A. Section 8(f) and the "Manifest" Requirement
 
 
 12
 We consider in turn the appropriate legal standard and the application of that standard to the facts of this case.
 
 1. The Appropriate Legal Standard
 
 13
 The Director contends that, under the Sec. 8(f) "manifest" requirement, "what must be manifest to the employer is the existence of a permanent partial disability, i.e., a serious condition that actually impairs the employee." Brief of Director, Office of Workers' Compensation Programs at 36. This contention, however, is inconsistent both with prior judicial interpretations of Sec. 8(f) and with Congress' intent in enacting that section.
 
 
 14
 As we have previously held,
 
 
 15
 the term "disability" in new Sec. 8(f) can be an economic disability under Sec. 8(c)(21) or one of the scheduled losses specified in Sec. 8(c)(1)-(20), but it is not limited to those cases alone. "Disability" under new Sec. 8(f) is necessarily of sufficient breadth to encompass those cases, like that before us, wherein the employee had such a serious physical disability in fact that a cautious employer would have been motivated to discharge the handicapped employee because of a greatly increased risk of employment-related accident and compensation liability.
 
 
 16
 C & P Telephone Co. v. Director, Office of Workers' Compensation Programs, 564 F.2d 503, 513 (D.C.Cir.1977). This broad definition of "disability" governs the manifest requirement under Sec. 8(f). When the evidence shows that such a "disability" was objectively apparent, the "manifest" requirement has been met. Thus, contrary to the Director's contention, the manifest condition need not be "a serious condition that actually impairs the employee" at the time of hiring or retention; an asymptomatic disability may be sufficient to motivate an employment decision and fulfill the "manifest" requirement.
 
 
 17
 This interpretation of the manifest requirement is well-supported by Congress' intent in enacting Sec. 8(f); the primary purpose of Sec. 8(f) is to prevent and reduce employment discrimination based on the risk of disability-related liability.
 
 
 18
 Many employers have an inaccurate impression regarding the liabilities for work[er's] compensation when they employ handicapped workers. [They believe] that an employer is subjected to burdensome compensation costs where a handicapped worker receives an injury.... [Section 8(f) ] makes clear that the employer's responsibility for the subsequent or second injury is limited....
 
 
 19
 S.Rep. No. 92-1125, 92d Cong., 2d Sess. 7 (1972), U.S.Code Cong. & Admin.News 1972, p. 4698; see also Lawson v. Suwannee Fruit & S.S. Co., 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949). Accordingly, the proper touchstone for the manifest requirement is not whether the underlying disabling condition "actually impairs the employee" but whether the condition puts the employer on notice of greatly increased liability and thus creates a risk of discrimination. Given developments in diagnostic techniques and technology, an employer might anticipate increased liability and terminate (or refuse to hire) a worker even though the worker's disabling condition does not, as of yet, impair him.
 
 
 20
 We reaffirm, therefore, that the appropriate legal standard for manifestation requires a showing of objective evidence of a serious disabling condition that would motivate the "cautious employer ... to discharge the [ ] employee because of a greatly increased risk" of liability. C & P Telephone, 564 F.2d at 513. This is the legal standard employed by the ALJ and articulated by the Board; and accordingly, that aspect of the Board's Order is affirmed.
 
 
 21
 2. The Scope of the Legal Standard as Applied
 
 
 22
 WMATA and the Board maintain that the 1973 X-rays and medical report which document Berkstresser's condition of "minimal degenerati[on]" were, as a matter of law, sufficient to fulfill the "manifest" requirement under Sec. 8(f), and that the ALJ erred in not so finding. We find the Board's application of the relevant legal standard to be overbroad and contrary to the statutory purpose of Sec. 8(f).
 
 
 23
 Berkstresser's medical condition, the ALJ found, was "usual[ ] in people [of his] age," "normal," and "not [medically] significant." Consequently, the position urged by WMATA and the Board would vastly expand eligibility for Sec. 8(f) relief. As the ALJ noted, adoption of the Board's position would be "tantamount to making middle age a prima facie pre-existing disability under Sec. 8(f)"; cf. General Dynamics Corp. v. Sacchetti, 681 F.2d 37, 40 (1st Cir.1982) (refusing to find that history of cigarette smoking fulfilled the manifest requirement because smoking was a "socially pervasive risk[ ]").
 
 
 24
 Such a vast expansion of Sec. 8(f) relief runs counter to Congress' express intent. The purpose of Sec. 8(f) is to prevent discrimination by employers who anticipate "a greatly increased risk of ... compensation liability" because of the hiring and retention of disabled employees. C & P Telephone, 564 F.2d at 513 (emphasis supplied). By definition, however, the existence of a "normal," medically insignificant condition does not pose such risks. If a condition is not medically significant, it will not "greatly increase[ the] risk" of liability. In enacting Sec. 8(f), Congress was responding not to employers' fear of the ordinary aging of the workforce, but rather to their fear of extraordinary liability for pre-existing conditions. In sum, although the Board and WMATA have articulated the correct legal standard, they are incorrect in maintaining that a condition, such as Berkstresser's, that is not medically significant constitutes, as a matter of law,[5] a manifest condition under Sec. 8(f).
 
 
 25
 The record demonstrates that the ALJ correctly applied the appropriate legal standard in assessing Berkstresser's claim. With greater precision than either the Board or the Director, the ALJ found that the manifest requirement had not been met because "the medical records predating the second injury ... established that claimant had no disability at that time." More specifically, the ALJ found that the 1973 medical report was "not the kind of evidence that would lead even 'a cautious employer to discharge the ... employee because of a greatly increased risk of ... liability.' " Contrary to the suggestion of the Board and WMATA, the ALJ found that the fact that the claimant had some condition did not satisfy the manifest requirement. Berkstresser's minimal spinal degeneration was not medically "significant"--it was "no worse than normal" and was "present in most people [of his age]"--and thus was not sufficient to raise the risk of employment discrimination and trigger Sec. 8(f) relief.
 
 
 26
 In summary, we hold that the ALJ correctly applied the proper legal standard in assessing the Sec. 8(f) claim and that the Board's reversal of that decision was in error.
 
 
 27
 B. Berkstresser's Eligibility for Total Disability Benefits
 
 
 28
 The Director also challenges the Board's affirmance of the ALJ's determination that Berkstresser was eligible for permanent total disability benefits only until the date of his maximum medical improvement rather than, as the Director contends, until the date on which WMATA demonstrated that suitable alternative employment was available. We find that the presumption employed by the Board in affirming the ALJ's decision is inconsistent with both the Longshore Act's definition of "disability" and the Act's evidentiary regime. We also find that the ALJ's determination was not supported by substantial evidence on the record.
 
 
 29
 Under the Longshore Act, "[o]nce the claimant demonstrates inability to perform his or her usual job, a prima facie case of total disability is established, which the employer may then seek to rebut by establishing the availability of other jobs which the claimant could perform." Crum v. General Adjustment Bureau, 738 F.2d 474, 479 (D.C.Cir.1984). Upon a showing of available, suitable employment, the employee's disability is treated as partial, not total.
 
 
 30
 In this case, it is uncontested that Berkstresser was unable to return to his former job as a bus driver. In July 1980, WMATA retained an employment consultant to locate available appropriate employment for Berkstresser.[6] On the basis of the consultant's testimony, the ALJ concluded that such employment "was available at the time ... total disability ceased"--that is, the time of maximum medical improvement. The Board affirmed this aspect of the ALJ's decision, but did not rely on the ALJ's finding. Instead, the Board ruled that "the administrative law judge was not bound to decide when the extent of disability became fixed solely on the basis of job availability." 16 Ben.Rev.Bd.Serv. at 234. The Board held that the ALJ could apply WMATA's demonstration of alternative employment retroactively to the date of Berkstresser's maximum medical improvement. Thus, under the Board's ruling, an employer's showing of available alternative employment creates a presumption that such employment was available at the time of maximum medical improvement. The Director challenges the Board's decision and contends that the Board's presumption of retroactivity is inconsistent with the Longshore Act.[7] We agree.
 
 
 31
 First, the Board's presumption conflicts with the statutory definition of disability (for purposes other than Sec. 8(f)) and mistakenly conflates two dimensions of disability defined by the Act: the degree of the incapacitation (total versus partial disability), and the duration of disability (temporary versus permanent disability). See 33 U.S.C. Sec. 908(a)-(e) (distinguishing among categories of disability). "Maximum medical improvement"--the time at which no further medical improvement is possible--separates temporary from permanent disability, not, as the Board suggests, total from partial disability. Similarly, the Board's presumption neglects the "well-established principle that disability is an economic as well as medical concept." Crum, 738 F.2d at 479 (D.C.Cir.1984); see also McBride v. Eastman Kodak Co., 844 F.2d 797 (D.C.Cir.1988). By suggesting that the date of maximum medical improvement marks the end of total economic disability, the Board's presumption fails to take seriously the economic component of disability under the Act.
 
 
 32
 Moreover, the Board's presumption of retroactivity is inconsistent with the burden-shifting evidentiary scheme recognized by this and other circuits. Once the employee has demonstrated an inability to perform his former job, the employer bears the burden of demonstrating that suitable alternative employment is available. As the Ninth Circuit recently noted in rejecting the Board's presumption, "[w]e place this burden on the employer, [because] '[o]therwise, the claimant would have the difficult burden of proving a negative, requiring him to canvass the entire job market.' " Stevens v. Director, Office of Workers' Compensation Programs, 909 F.2d 1256, 1258 (9th Cir.1990) (citation omitted). For these reasons, we reject as contrary to the Longshore Act the Board's holding that a showing of available alternative employment may be applied retroactively to the date of maximum medical improvement.
 
 
 33
 In making his determination that Berkstresser should receive permanent partial disability benefits from the date of his maximum medical improvement, the ALJ did not rely on the Board's presumption, but instead expressly found that employment was "undoubtedly ... available at the time of maximum medical improvement." Thus, despite the infirmity of the Board's presumption, the ALJ's determination should be affirmed if it is supported by substantial evidence on the record as a whole.
 
 
 34
 Upon a thorough review of the lengthy record, we are unable to find such substantial evidence. The sole evidence supporting the ALJ's determination is the testimony of the employment counselor that he had located appropriate employment for Berkstresser in June 1980. Although the counselor testified that in the past he had placed other persons in similar positions, he also testified that he had only been employed as a counselor since January 1980, and that his pre-1980 employment did not involve identification of entry-level positions of the type involved in Berkstresser's case. This evidence is insufficient to support the ALJ's finding that alternative employment was available in August 1978, at the time of Berkstresser's maximum medical improvement. Therefore, we cannot affirm the ALJ's determination of Berkstresser's eligibility for permanent partial disability benefits.
 
 
 35
 Accordingly, we reverse the Board's decision and remand this case for further proceedings consistent with this opinion.
 
 
 
 [1]
 The Longshore Act governs claims by persons employed in the District of Columbia and arising before 1980. See Crum v. General Adjustment Bureau, 738 F.2d 474, 475 n. 1 (D.C.Cir.1984)
 
 
 [2]
 33 U.S.C. Sec. 908(f) provides, in relevant part:
 Injury increasing disability:
 (1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury.... [In] cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide in addition to compensation under subsections (b) and (e) of this section, compensation payments or death benefits for one hundred and four weeks only....
 [In] cases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide in addition to compensation under subsections (b) and (e) of this section, compensation for one hundred and four weeks only.
 (2)(A) After cessation of the payments for the period of weeks provided for herein, the employee or his survivor entitled to benefits shall be paid ... out of the special fund established in section 944 of this title....
 
 
 [3]
 Employer liability is limited to 104 weeks of benefits with the remainder of the benefits paid out of a special "second-injury" fund created by the Act. See 33 U.S.C. Secs. 908(f), 944
 
 
 [4]
 The Board's argument is apparently based on a misunderstanding of the ALJ's findings. The ALJ found that Berkstresser suffered from a pre-existing partial disability at the time of his second injury; such a finding is not inconsistent with a finding that Berkstresser's condition was not manifest in 1973
 
 
 [5]
 The Board's contention that Berkstresser's condition fulfilled the "manifest" requirement also fails if reviewed as a claim of fact, rather than a claim of law. "[F]indings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. Sec. 921(b)(3). The ALJ's finding that Berkstresser's minimal spinal degeneration in 1973 did not fulfill the "manifest" requirement is well supported in the evidence and consistent with the policies of the statute. Thus, if reviewed as a claim of fact, the Board's holding must be reversed as in excess of its statutory review authority. Cf. Director, Office of Workers' Compensation Programs v. Belcher Erectors, 770 F.2d 1220, 1222 (D.C.Cir.1985)
 
 
 [6]
 Although the consultant identified several appropriate openings and arranged interviews for Berkstresser with the potential employers, Berkstresser did not attend these interviews and did not accept any of the identified positions
 
 
 [7]
 "[T]he Benefits Review Board is not a policymaking agency; its interpretation of the LHWCA thus is not entitled to any special deference from the courts." Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980)