**Richard L. PALOMBO, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and General Dynamics Corporation, Respondents.**

No. 678, Docket 90–4047.

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1990.

Decided June 26, 1991.

Matthew Shafner, Groton, Conn. (Carolyn P. Kelly, Cynthia Fausold Schwanz, Nathan J. Shafner, O'Brien, Shafner, Bartinik, Stuart & Kelly, P.C., of counsel), for petitioner.

Marianne Demetral Smith, Atty., U.S. Dept. of Labor, Office of the Sol., Washington, D.C. (Robert P. Davis, Sol. of Labor, Carol A. De Deo, Associate Sol., Janet R. Dunlop, Counsel for Longshore, U.S. Dept. of Labor, of counsel), for respondent Director, Office of Workers' Compensation Programs.

Norman P. Beane, Jr., Boston, Mass. (Diane M. Broderick, Murphy & Beane, of

counsel), for respondent General Dynamics Corp.

Before KEARSE, PIERCE and MINER, Circuit Judges.

PIERCE, Senior Circuit Judge:

This is a petition for review of a final order of the Benefits Review Board affirming a denial by the Administrative Law Judge ("ALJ") of petitioner's claim for permanent total disability benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1988) ("LHWCA"). We grant the petition and reverse the Board's order on two grounds. First, we hold that a claimant may rebut his employer's showing of suitable alternative employment by demonstrating that he diligently tried and was unable to secure such employment. Second, we additionally hold that a claimant's *prima facie* entitlement to total disability benefits continues until the date when suitable alternative employment is found to be first available to the claimant.

## I.

Petitioner Richard Palombo began working for General Dynamics Corporation in May 1982. He was employed as a carpenter at General Dynamics' Electric Boat shipyard in Groton, Connecticut. On July 27, 1982, during the course of his employment, Palombo slipped while climbing down a ladder and injured his left knee. He has undergone surgery four times since his injury to repair torn cartilage and a fracture of the tibial plateau of the left knee. In January 1984, Palombo's treating physician informed him that he was "fit for full-time employment, if such employment does not involve any significant ambulatory activity." Palombo has not worked since his injury, although he testified that he repeatedly sought light duty work at General Dynamics and sedentary employment with other employers.

In September 1983, Palombo, who had been receiving temporary total disability benefits from the date of his injury, filed a claim under the LHWCA for permanent total disability benefits. The ALJ held a hearing on Palombo's claim in April 1987. In a Decision and Order filed on August 12, 1988, the ALJ first found, based on medical testimony, that Palombo had a permanent ten percent impairment of his left knee and could not return to his pre-injury employment as a carpenter. This finding established Palombo's *prima facie* entitlement to total disability benefits and shifted the burden to the employer to show the existence of suitable alternative employment. General Dynamics responded by offering the testimony and reports of a vocational rehabilitation counselor who had prepared labor market surveys showing jobs available in August 1985 and July 1987, including tool repairer, bench worker, assembler, and plastics repairer.

The ALJ determined that three of the jobs in the July 1987 survey were reasonably available to Palombo considering his age, education, vocational history and physical limitations and that General Dynamics had therefore met its burden. "For these reasons," the ALJ concluded, "I find that the Claimant is not permanently and totally disabled but rather that he is permanently and partially disabled." The ALJ accordingly awarded Palombo permanent partial disability benefits, and ordered that benefits begin as of January 7, 1984, the date Palombo reached "maximum medical improvement." Palombo appealed the ALJ's decision to the Board.

In a brief per curiam Decision and Order, the Board affirmed, holding that the ALJ's decision "is supported by substantial evidence, is rational and is in accordance with law." Palombo timely filed a petition for review of the Board's decision.[1] Palombo argues, *inter alia*, that the Board erred in affirming the ALJ's finding of partial dis-

---

1. Section 21(c) of the LHWCA provides in part: Any person adversely affected or aggrieved by a final order of the [Benefits Review] Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order [a petition for review].... 33 U.S.C. § 921(c) (1988).

ability without considering Palombo's alleged efforts to find suitable alternative employment. Alternatively, Palombo argues that the Board and ALJ erred in ordering that partial disability benefits begin as of the date of maximum medical improvement rather than the date when suitable alternative employment identified by General Dynamics first became available. The Director of the Office of Workers' Compensation Programs of the U.S. Department of Labor joined as a respondent in support of petitioner, urging reversal of the Board's decision on the above two grounds.

## II.

In *American Stevedores, Inc. v. Salzano*, 538 F.2d 933 (2d Cir.1976), we set forth a two-step burden-shifting scheme to be applied in analyzing claims under the LHWCA. Once a claimant demonstrates an inability to return to his job because of a work-related injury, he is considered totally disabled within the meaning of the LHWCA and the burden shifts to the employer to prove the availability of suitable alternative employment in the claimant's community. *See id.* at 935–36. If the employer establishes the existence of such employment, the employee's disability is treated as partial, not total. *Director, Office of Workers' Compensation Programs v. Berkstresser*, 921 F.2d 306, 312 (D.C.Cir. 1991). Today, we add an additional, complementary step to the burden-shifting scheme outlined in *Salzano:* the claimant may rebut his employer's showing of suitable alternative employment—and thus retain entitlement to total disability benefits—by demonstrating that he diligently tried but was unable to secure such employment.

Other circuits applying the same general burden-shifting rule to LHWCA claims have expressly held that an injured employee can rebut the employer's showing of suitable alternative employment by showing diligent efforts to find work. *See Newport News Shipbuilding & Dry Dock Co. v. Tann*, 841 F.2d 540, 542 (4th Cir.1988); *Roger's Terminal & Shipping Corp. v.*

*Director, Office of Worker's Compensation Programs*, 784 F.2d 687, 691 (5th Cir.), *cert. denied*, 479 U.S. 826, 107 S.Ct. 101, 93 L.Ed.2d 51 (1986). In its decisions, the Benefits Review Board has also incorporated this addition to the burden-shifting scheme. *See Dove v. Southwest Marine of San Francisco, Inc.*, 18 Ben.Rev.Bd.Serv. 139, 141 (1986); *Royce v. Elrich Constr. Co.*, 17 Ben.Rev.Bd.Serv. 157, 159 n. 2 (1985). For the reasons that follow, we agree that this is an appropriate refinement of the burden-shifting rule, consistent with our holding in *Salzano* and with the policies of the LHWCA.

The Supreme Court has long held that the LHWCA must be " 'liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results.' " *Director, Office of Workers' Compensation Programs v. Perini N. River Assocs.*, 459 U.S. 297, 315–16, 103 S.Ct. 634, 646, 74 L.Ed.2d 465 (1983) (quoting *Voris v. Eikel*, 346 U.S. 328, 333, 74 S.Ct. 88, 92, 98 L.Ed. 5 (1953)); *see also O'Keeffe v. Smith, Hinchman & Grylls Assocs., Inc.*, 380 U.S. 359, 362–63, 85 S.Ct. 1012, 1014–15, 13 L.Ed.2d 895 (1965). Like state workers' compensation laws, the LHWCA seeks to compensate employees for injuries sustained in the course of their work, and to pass that cost on to the employer, who benefits most from the employee's labor. *See Baltimore & Philadelphia Steamboat Co. v. Norton*, 284 U.S. 408, 414, 52 S.Ct. 187, 189, 76 L.Ed. 366 (1932). Affording the employee an opportunity to prevail by showing he diligently sought but was unable to secure another job is in accord with the remedial goals of the LHWCA. Moreover, we believe it is unduly "harsh and incongruous" to find that suitable alternative employment was reasonably available if the claimant demonstrates that, through his own diligent efforts, he could not find such a job.

We note here that the burden of establishing suitable alternative employment is placed on the employer merely to avoid placing on the injured employee "the difficult burden of proving a negative, requiring him to canvass the entire job mar-

ket." *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs*, 629 F.2d 1327, 1329 (9th Cir.1980). To satisfy this evidentiary burden, the employer does not have to find an actual job offer for the claimant, but must merely establish the existence of jobs open in the claimant's community that he could compete for and realistically and likely secure. *See New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1042–43 (5th Cir. Unit A Nov.1981). Typically, as in this case, this is accomplished by vocational experts who prepare surveys of job openings. However, "there is no requirement that the vocational expert must actually contact potential employers to inquire whether they would hire someone of the claimant's general age, background, and disability, or convey information about job openings to the claimant." *Tann*, 841 F.2d at 543. Given the limited nature of this showing by the employer, we believe that a claimant's lack of success after diligently searching for a suitable job may be equally or even more probative of actual job availability.

Finally, allowing injured employees to prevail by showing they are unable to find work despite their best efforts comports with other important goals of the LHWCA. The LHWCA seeks not only to compensate workers for their injuries, but to promote their rehabilitation and return to the workforce. *See Stevens v. Director, Office of Workers' Compensation Programs*, 909 F.2d 1256, 1260 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 798, 112 L.Ed.2d 860 (1991); *Turner*, 661 F.2d at 1042. By encouraging claimants to actively search for another job they are capable of performing, our holding furthers these important goals of the LHWCA.

In this case it is unclear whether Palombo diligently tried to find suitable alternative employment of the type, essentially sedentary bench-work, that General Dynamics established was reasonably available in Palombo's community. In his testimony before the ALJ, Palombo stated that he tried to find "other employment." In his brief to this court, Palombo claims simply that he "searched for work on his own and found nothing." No details are given concerning how Palombo conducted his job search, where he looked for work or what type of jobs he sought.

Palombo, however, further asserts in his brief that his "opportunity to demonstrate [a] diligent effort in seeking employment has been thwarted by [his] employer's failure to disclose such employment opportunities until [the] time of trial." According to Palombo, since "the employer never made available to the employee information regarding any of the prospective alleged job opportunities ... such opportunities were not reasonably attainable and available." We reject this argument.

As we noted above, the employer's burden to show suitable alternative employment is a limited, evidentiary one. The employer is not required to become, in effect, an employment agency for the claimant, *see Turner*, 661 F.2d at 1042, or to convey to claimant information about currently available jobs. *See P & M Crane Co. v. Hayes*, 930 F.2d 424, 429 n. 9 (5th Cir.1991) ("An employer must present these job openings to the court to satisfy its burden of proof on the alternate employment issue, and not to its employee so as to facilitate his job search."); *Tann*, 841 F.2d at 543 (no requirement that employer find currently available jobs or convey information about job openings to claimant). That would place an unreasonable burden on the employer and also run counter to the rehabilitative goals of the LHWCA by discouraging claimants from actively searching for alternative employment themselves. *See P & M Crane Co.*, 930 F.2d at 430–31; *Tann*, 841 F.2d at 543.

On the other hand, given the limited burden placed on the employer, the claimant, in proving diligence, is not required to show that he tried to get the identical jobs the employer showed were available. The claimant merely must establish that he was reasonably diligent in attempting to secure a job "within the compass of employment opportunities shown by the employer to be reasonably attainable and available." *Turner*, 661 F.2d at 1043. In this case, Palombo could carry his burden by show-

ing that he diligently tried to obtain employment similar to the sedentary bench-work jobs General Dynamics demonstrated were reasonably available in Palombo's community.

In his opinion, the ALJ referred briefly to Palombo's own alleged efforts to find a job he could perform:

Claimant attempted to secure a job at the General Dynamics shipyard which would allow for his physical work restrictions but was advised that there were no such jobs available at the shipyard. He further testified that he sought employment of a light duty nature at General Dynamics every three to six months to no avail. Claimant testified that he had sought other employment, but had not been successful.

This testimony was apparently uncontradicted. The ALJ, however, although refusing to credit Palombo's testimony on another matter,[2] did not state whether he believed Palombo's claim that he "sought other employment." He also did not render findings on the nature of Palombo's job-search or whether it was in fact diligent. Finally, the ALJ did not discuss Palombo's alleged efforts in the analysis section of his opinion. Under the new step we add today to the burden-shifting scheme, when the claimant offers evidence that he diligently tried to find a suitable job, we believe the ALJ should make specific findings regarding the nature and sufficiency of claimant's alleged efforts.

While we speak in terms of an addition to the burden-shifting process, our decision should not be construed to mean the claimant is *required* to offer evidence that he diligently sought a new job. A claimant who has established his *prima facie* entitlement to total disability can rely on the statutory presumption of coverage and try to retain that status by showing that the employer has not met its burden of showing suitable alternative employment. *See, e.g., Roger's Terminal,* 784 F.2d at 691 ("burden placed on the employee does not displace the employer's *initial* burden of demonstrating job availability") (emphasis in original). If the employer is found to have met this burden, however, our holding provides the claimant with the opportunity to rebut this showing by demonstrating that he diligently tried, without success, to find another job.

Accordingly, we reverse the Board's order affirming the ALJ's determination of partial disability and remand to the ALJ for proceedings consistent with this opinion. On remand the ALJ should make specific findings regarding Palombo's diligence in searching for work within the sphere of available jobs shown to exist by General Dynamics. If the ALJ is persuaded that Palombo diligently tried to find such a job without success, then Palombo should be found to have rebutted General Dynamics' showing of the availability of suitable alternative employment and would thus be entitled to an award of total disability benefits.

## III.

Palombo, joined by the Director, alternatively argues that if we conclude that the Board was correct in upholding the ALJ's determination of partial disability, we must reverse the Board's decision because the ALJ and the Board erred in determining that partial disability begins on the date of maximum medical improvement, rather than the date on which suitable alternative employment was shown to have been available. The issue of when total disability becomes partial within the meaning of the LHWCA has not been decided by this court.[3] Although we reverse the determi-

---

**2.** Palombo, after amending his original claim for compensation based on his knee injury, additionally sought compensation for a back injury. The ALJ dismissed the claim, stating that Palombo "failed to show that his back injury is work-related. Specifically, the allegation that his back condition is related to his work injury of July 27, 1982 is not credible." Palombo does not seek review of this portion of the ALJ's decision.

**3.** Two other circuits have recently addressed this precise issue and held that disability becomes partial when suitable alternative employment first becomes available and that proof of such alternative employment may not be applied retroactively to the date of maximum

nation of partial disability and remand for findings on Palombo's diligence in searching for work and the effect thereof, we find it appropriate to also address petitioner's alternative argument.

The concept of disability under the LHWCA is based on two classifications, the nature or duration of the disability (temporary or permanent) and the degree of disability (total or partial). *See Berkstresser*, 921 F.2d at 312; *see also* 33 U.S.C. § 908(a)–(e) (statutory disability categories). The date of "maximum medical improvement"—the point when the injury has healed to the full extent possible—marks the end of the temporary period of disability; thereafter any remaining injury is considered permanent. The degree of disability, that is, its total or partial character, however, is not determined solely by reference to medical information. The LHWCA defines disability as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10). In accordance with this statutory definition, courts have viewed disability principally in economic terms. *See, e.g., Stevens*, 909 F.2d at 1259 ("definition encompasses an economic, wage-earning aspect"); *McBride v. Eastman Kodak Co.*, 844 F.2d 797, 799 (D.C. Cir.1988) (an "exclusively physical view of disability defeats the purpose of the LHWCA. The statute's equation of disability with 'wage-earning capacity' reflects a concern for the economic consequence of job-related injuries"); *Korineck v. General Dynamics Corp.*, 835 F.2d 42, 43 (2d Cir. 1987) (statutory definition "demonstrates that the LHWCA is designed to compensate for lost wage-earning capacity").

To use the date of maximum medical improvement as the beginning of partial disability status, as the ALJ and the Board did in this case, is erroneous for two reasons. First, the date of maximum medical improvement separates temporary from permanent disability; it has no direct relevance to the question of whether disability is total or partial. The nature and degree

of a disability are concepts that require separate analysis; using the date of maximum medical improvement as the determinative factor in both inquiries improperly conflates the two dimensions of disability defined by the LHWCA. *See Berkstresser*, 921 F.2d at 312; *Stevens*, 909 F.2d at 1259.

In addition, using the date of maximum medical improvement as the beginning of partial disability status, rather than the date on which alternative employment is first shown to be available, gives undue weight to the physical aspects of disability and tends to ignore the important economic consequences. *See Stevens*, 909 F.2d at 1259–60. As noted above, an exclusively physical view of disability defeats the purpose of the LHWCA, since the statute's definition of disability is based on the worker's lost wage-earning capacity. It is the worker's inability to earn wages and the absence of alternative work that render him totally disabled, not merely the degree of physical impairment. "Until there is a job that the injured worker can perform, his injury is totally disabling." *Stevens*, 909 F.2d at 1257.

Moreover, further problems are posed when a later showing of suitable alternative employment is applied retroactively to the date of maximum medical improvement. As the Ninth Circuit pointed out in *Stevens*, such a retroactive application assumes that the job market was the same at the time of maximum medical improvement as it was when, according to the employer's showing, alternative employment first became available to the claimant. *See Stevens*, 909 F.2d at 1260. We believe this assumption to be far too speculative given even normal fluctuations in the economy and the consequent movement and disappearance of many manual labor jobs. In this case, such an assumption would be particularly unreliable because a gap of more than three years occurred between the time Palombo reached maximum medical improvement and the July 1987 date when General Dynamics established that alternative employment was available.

---

medical improvement. *See Berkstresser*, 921 F.2d at 312; *Stevens*, 909 F.2d at 1258–60.

In sum, we hold that partial disability status commences on the earliest date that the employer shows suitable alternative employment to be available. Such a showing may not be applied retroactively so as to commence partial disability status before suitable alternative employment is shown to exist. This does not mean that an employer cannot satisfy its burden by showing the existence of jobs at an earlier point in time, even if they no longer exist. *See Stevens,* 909 F.2d at 1260 (employer can show "there was suitable alternative available work at the time of maximum medical improvement, even several years after that point. The employer merely needs to overcome the inherent limitations of credible and trustworthy evidence."); *Tann,* 841 F.2d at 543 ("employer may meet its burden of showing available alternative employment by presenting evidence of jobs which, although no longer open when located, were available during the time the claimant was able to work").

Our holding obviously creates an incentive for the employer to show the availability of jobs at the earliest possible date, since the claimant will be entitled to total disability benefits until that date. In this case, Palombo was found to have reached maximum medical improvement in January 1984 and to have been capable of gainful employment thereafter. General Dynamics submitted labor market surveys showing jobs available in 1985 and 1987. In finding General Dynamics had satisfied its burden of showing suitable alternative employment, the ALJ relied on the 1987 survey, without giving any reasons for rejecting the 1985 survey. On remand, if the ALJ rejects Palombo's claim that he diligently sought work and thus finds him only partially disabled, we think that General Dynamics should be given an opportunity to show that suitable alternative employment existed at the earliest possible date after Palombo reached maximum medical improvement. At a minimum, the ALJ should give consideration to General Dynamics' 1985 labor market survey evidence.

## IV.

The Board's decision is reversed and remanded for further proceedings consistent with this opinion. We have considered all of petitioner's remaining claims and find them to be without merit.