

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-10-2009

# Greenwich Term v. OWCP

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4732

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Greenwich Term v. OWCP" (2009). *2009 Decisions.* Paper 1890.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1890

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4732
_____

GREENWICH TERMINALS, LLC;
AMERICAN MOTORIST/EAGLE INSURANCE COMPANIES,
Petitioners

v.

OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR;
THOMAS REDFIELD,
Respondents

_____

Petition for Review of an Order of the
United States Department of Labor
Office of Workers' Compensation Benefits Review Board
(Agency No. BRB-1: 07-0313)
Administrative Law Judge:  Honorable Ralph A. Romano

_____

Submitted Under Third Circuit LAR 34.1(a)
February 2, 2009

Before:  RENDELL, JORDAN and ROTH, <u>Circuit</u> <u>Judges</u>.

(Filed: February 10, 2009)

_____

OPINION OF THE COURT

_____

RENDELL, <u>Circuit Judge</u>.

Greenwich Terminals, LLC and American Motorist/Eagle Insurance Companies

(collectively "Greenwich") seek review of the Administrative Law Judge's final determination granting the Respondent Redfield Thomas' claim for benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, following Thomas' injury in a workplace accident. The Benefits Review Board affirmed,[1] and Greenwich filed this appeal.[2] Greenwich contends that the Administrative Law Judge ("ALJ") improperly applied the "true-doubt" rule to resolve factual issues, improperly excluded evidence, discredited credible testimony from vocational and medical experts, and determined, without evidentiary support, that Thomas diligently pursued employment. Finding substantial evidence for each of the ALJ's determinations, we will deny the Petition for Review.

## I.

In May of 2003, Respondent Redfield Thomas sustained serious, permanent injuries to his spine and neck while working at Greenwich's Packer Avenue Marine Terminal, when a 200-pound flipper detached from a crane and crashed on top of him. A. 13a. The impact fractured multiple vertebrae in Thomas' spine, requiring his temporary placement in a body cast, six months of 24-hour supervision, and intensive physical

---

[1] The Benefits Review Board ("BRB") affirmed the ALJ's grant of relief under the Longshore and Harbor Workers' Compensation Act but vacated the award of attorney's fees. A. 9a. Greenwich does not challenge the attorney's fee award and, therefore, we do not address the issue here.

[2] 33 U.S.C. § 901 confers appellate jurisdiction over appeals from the decisions of the Benefits Review Board.

rehabilitation. A. 14a.

Approximately eighteen months after the accident, in January of 2005, Greenwich approached Thomas about returning to work, offering him two positions at the company: top pick operator and yard horse operator. A. 16a-17a. Against his doctor's advice, Thomas accepted the former position. A. 15a-16a. On April 4, 2005, his first day of work, Thomas aggravated the nerves in his neck while attempting to operate the top pick, and was immediately hospitalized, suited with a temporary neck brace, and prescribed pain and anti-inflammation medication. A. 16a.

In evaluating Thomas' ability to serve as a top pick operator, the ALJ considered, but ultimately discredited, a video demonstration of that position proffered by Greenwich. Thomas testified, and Burleson acknowledged on cross-examination, that the video omitted certain physical maneuvers operators must perform. A. 15a-18a. Accordingly, the ALJ concluded that the video did not completely and accurately represent the duties of a top pick operator. A. 15a, 27a-29a.

Crediting Thomas' testimony, and the opinion of his treating orthopedist, Dr. Roy Lefkoe, the ALJ concluded that Thomas could not physically perform the top pick or yard horse operator positions. A. 20a-21a. After careful analysis, the ALJ rejected the medical and vocational evidence proffered by Greenwich. This included testimony and medical reports prepared by two orthopedists, Dr. Alexander Vacarro and Dr. Richard Mandel, two physical therapists, Thomas Cantwell and Deborah Shore, and Greenwich's

3

vocational consultant, Sonya Mocarski. The ALJ also excluded video surveillance of Thomas climbing stairs and driving his car, urged by Greenwich to be relevant to his ability to perform the job of top pick operator. A. 19a.

After his failed attempt to return to work, Thomas began vocational training with Dr. Robert Chaiken, a vocational rehabilitation specialist with the Department of Labor. A. 14a. Dr. Chaiken identified, and Thomas applied for, positions at six local companies. A. 24a. Despite his complete cooperation with Dr. Chaiken, Thomas was unable to obtain a job. A. 14a. Concurrently, a second vocational consultant, Sonya Mocarski, prepared a survey of local employment opportunities at Greenwich's request. A. 14a. Ms. Mocarski identified twelve positions; however, the ALJ determined that Thomas' physical restrictions would only allow him to perform four of these, the first of which became available on April 10, 2005. A. 14a-15a, 20a-21a. Because April 10, 2005, marked the earliest date on which suitable alternate employment became available to Thomas, the ALJ determined, and the Benefits Review Board affirmed, that Thomas was totally disabled prior to April 10, 2005, and partially disabled after that date. A. 21a.

**II.**

To establish a *prima facie* case of total disability under the LHWCA, the claimant must show that he is unable to return to his usual employment due to the injury. *McCabe v. Sun Shipbuilding and Dry Dock Co.*, 602 F.2d 59, 62 n.7 (3d Cir. 1979). Once the claimant establishes a *prima facie* case, the burden shifts to the employer, who must show

4

that suitable alternate employment exists. *Id.*  The employer meets the burden of establishing suitable alternate employment by identifying specific jobs at the claimant's current place of employment or in the local community that are available to the claimant, given his particular physical restrictions. *Id.*; *American Stevedores, Inc. v. Salzano*, 538 F.2d 933, 935-36 (2d Cir. 1976).  The fact finder is to determine the claimant's restrictions based on the medical evidence and decide whether the claimant is capable of performing the jobs identified by the employer.  If the employer meets this burden, the claimant must then prove that he has made a diligent attempt to secure employment. *Palombo v. Director, OWCP*, 937 F.2d 70, 73 (2d Cir. 1991).  If the claimant demonstrates that he diligently tried to obtain employment, without success, **he prevails.** *See Hairston v. Todd Shipyards Corp*, 849 F.2d 1194, 1196 (9th Cir. 1988).  If, on the other hand, the claimant is unable to prove he diligently pursued suitable jobs identified by the employer, but those jobs pay wages less than the claimant's pre-disability employment, then the claimant is deemed partially, rather than totally, disabled. *See Louisiana Ins. Guar. Ass'n v. Bunol*, 211 F.3d 294, 297 (5th Cir. 2000); *New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1042 (Former 5th Cir. Nov. 1981).

An ALJ's findings of fact are treated as conclusive if supported by substantial evidence in the record considered as a whole. 33 U.S.C. § 921(b)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Del. River Stevedores, Inc. v. Director, OWCP*, 279 F.3d 233, 241

(3d Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)).

Here, Greenwich alleges errors of fact and law.

Greenwich assigns a single error of law – the ALJ applied the "true doubt rule" to resolve factual issues, in violation of the Administrative Procedures Act. Under the "true doubt rule," fact issues are resolved in the claimant's favor when the evidence is evenly balanced. The Supreme Court has held that the rule violates the Administrative Procedures Act. *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 281 (1994). Here, the ALJ, citing *Greenwich Collieries*, expressly rejected the "true doubt rule"; nonetheless, Greenwich maintains that the ALJ *implicitly* invoked the rule in its fact-finding. Greenwich's argument collapses by its own admission. The "true doubt rule," a decisional "tiebreaker," applies only where the evidence is in equipoise. However, Greenwich concedes in its brief that the ALJ found the evidence was *not* evenly balanced, but rather decisively favored Thomas' position. Petitioners' Br. at 23. Hence, the ALJ, **who** found no evidentiary "tie" to exist here, did not implicitly rely on the "true doubt rule" for its fact-finding.[3]

Greenwich next contends that the ALJ's factual determinations were unsupported. First, Greenwich maintains that the ALJ misapprehended the physical demands imposed by the top pick operator position. Greenwich complains that the ALJ improperly credited

_____

[3] To the extent Greenwich is contending that the ALJ improperly *weighed* the evidence in the record, we reject that argument for the reasons set forth below.

Thomas' testimony over a video demonstration depicting a top pick operator's duties. We find that the ALJ reasonably rejected the video demonstration proffered by Greenwich. Thomas testified, and Greenwich's assistant terminal manager, John Burleson, acknowledged on cross-examination, that the video demonstration was deficient, omitting five activities top pick operators regularly perform: (1) neck- and torso-twisting to view traffic behind the machine; (2) ascending and descending two flights of stairs to enter and exit the machine; (3) using both hands simultaneously to steer the machine and manipulate control levers; (4) looking upwards and downwards to stack containers; and (5) sitting continuously for over four hours. A. 15a, 27a-29a. Thomas and Burleson's testimony about the video's shortcomings was uncontroverted. Thus, the ALJ's determination of the physical requirements of the position was supported by substantial evidence.

Next, Greenwich contends that, after the accident, it offered Thomas suitable employment as a top pick operator or yard horse operator. The ALJ reasonably concluded that both positions exceeded Thomas' physical capabilities, and that his participation in either activity could exacerbate his injuries. A. 27a-28a. Thomas and Burleson identified specific activities that a top pick operator must regularly perform, including twisting his neck and torso, ascending and descending stairs, looking upwards and downwards, sitting continuously for several hours, and simultaneously using both hands. A. 21a, 27a-29a. Dr. Lefkoe opined that Thomas' injuries precluded his

7

repeatedly performing these activities on a daily basis. A. 27a-28a.

The ALJ's conclusion that Thomas could not perform either job offered to him was also supported by Thomas' own testimony, which the ALJ found credible. Thomas testified that he was physically incapable of twisting his torso, looking up and down, sitting continuously for several hours, using both hands simultaneously, and climbing in and out of the vehicle, on a regular basis. A. 15a. Practical experience confirmed these limitations: attempting to operate the top pick machine on his first day of work, Thomas struggled to manipulate levers while steering the vehicle, and was ultimately hospitalized with neck injuries. A. 16a. Thus, we find substantial evidence to support the ALJ's determination that Thomas was unable to operate the top pick machine.[4]

Greenwich, in turn, contends that the ALJ failed adequately to consider the opinions of Drs. Vacarro and Mandel, as well as Thomas' physical therapists, Mr. Cantwell and Ms. Shore. Greenwich contends, moreover, that the ALJ erroneously excluded video surveillance of Thomas driving his car and climbing stairs – tasks

_____

[4] Likewise, substantial evidence supports Thomas' inability to perform the job of yard horse operator. Thomas testified, and Burleson concurred, that the position, which required using a "hustle truck" to move containers around a yard filled with potholes, imposed greater physical demands on the operator than the top pick position. A. 15a, 29a. Because a yard horse operator must slam the hustle truck into a container to make a connection, he must engage in a "lot of bending and being thrown around." A. 15a. Dr. Lefkoe specifically proscribed such activities, noting that frequent twisting and jostling would exacerbate Thomas' injuries. A. 21a-22a. Thus, the ALJ's determination that Thomas could not perform the job of yard horse operator finds substantial support in the record.

8

purportedly relevant to his ability to perform the jobs offered to him.

An Administrative Law Judge is entitled to weigh the evidence and draw his own inferences, and is not required to accept the opinion or theory of a particular medical examiner. *Avondale Shipyards v. Kennel*, 914 F.2d 88, 91 (5th Cir. 1988). Although the ALJ may not employ his own expertise against that of a physician who presents competent medical evidence, he may choose whom to credit, provided he articulates a rational explanation for doing so. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)). Here, Dr. Vacarro, who treated Thomas until March 2004, concluded that Thomas' physical restrictions did not preclude employment as a top pick operator. We find that the ALJ rationally credited Dr. Lefkoe's opinion over that of Dr. Vacarro. Dr. Vacarro formulated his recommendation based on physical restrictions placed on Thomas in November of 2003 – over two years before his disability hearing. As the ALJ observed, Dr. Vacarro's opinion failed to reflect the subsequent deterioration in Thomas' condition.[5] A. 28a. Dr. Lefkoe, by contrast, based his opinion on monthly examinations of the claimant conducted since June of 2004. A. 21a. *See Plummer*, 186 F.3d at 429 (quoting *Rocco v.*

---

[5] Thomas aggravated his injuries when he attempted to operate the top pick machine in April of 2004, and an MRI completed in November 2005 revealed deterioration of Thomas' spine, including degenerative disc disease and a bulging disk. A. 22a. Indeed, Thomas' doctors agreed that he attained MMI, i.e., a state in which his condition would not improve, several months *after* Dr. Vacarro's initial determination of Thomas' physical restrictions in November of 2003. A. 19a, 22a.

*Heckler*, 886 F.2d 1348, 1350 (3d Cir. 1987) (noting that "treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"). We find that the ALJ articulated a reasonable basis for adopting Dr. Lefkoe's opinion over that of Dr. Vacarro and, therefore, discern no error. *See id.* (citing *Stewart*, 714 F.2d at 290*)* (noting that ALJ must articulate "some reason for discounting the evidence she rejects").

Greenwich also cites the opinion of a second orthopedist, Dr. Mandel, who examined Thomas at Greenwich's request, but did not treat him. We find that Dr. Mandel's testimony undermines rather than aids Greenwich's position. After Thomas described the duties of a top pick operator to Dr. Mandel, he concluded that Thomas could *not* perform the job. A. 20a. Only after reviewing the video demonstration of the job – which we find the ALJ properly rejected -- did Dr. Mandel modify his conclusion. A. 20a. Because Dr. Mandel predicated his revised opinion on erroneous assumptions about the position, the ALJ correctly discredited it.

Greenwich also contends that the ALJ erred in rejecting the opinions of Mr. Cantwell and Ms. Shore, Thomas' physical therapists, who concluded that Thomas could perform the job of top pick operator. Like Dr. Mandel, Mr. Cantwell relied on the video demonstration of the position to formulate his opinion and, therefore, the ALJ properly rejected his opinion. A. 29a. The ALJ identified a separate defect in the opinion of Ms.

10

Shore, who formulated her conclusions without consulting Thomas' medical restrictions. A. 29a. Accordingly, we find that the ALJ articulated a rational basis for discrediting each of the medical and vocational opinions upon which Greenwich relies.

Lastly, Greenwich contends that the ALJ improperly excluded video surveillance of Thomas occasionally climbing the stairs in his home and driving his car – activities purportedly relevant to his ability to perform the job of top pick operator and yard horse operator. We need not decide whether exclusion of the video was error, for even if it was, it was harmless. On cross-examination, Thomas acknowledged his occasional use of a car and the stairs in his home – the primary activities depicted in the surveillance footage. Further, the ALJ rationally determined that whether Thomas could climb stairs occasionally, or drive his car, **was** irrelevant to his ability to operate a top pick, a piece of heavy machinery imposing unique physical demands on its operator. As discussed earlier, the ALJ identified several specific tasks that top pick operators must regularly perform, but which Thomas' physical restrictions prohibited his doing *frequently*.[6] The ALJ reasonably determined that Thomas' *occasional* use of his car or the stairs in his home had no bearing on his ability to perform these five tasks on a frequent basis. Accordingly, the ALJ's exclusion of the surveillance video, even if it was admissible, was harmless.

Greenwich complains that Thomas did not diligently pursue employment after his

---

[6] Frequently is characterized as 1/3 to 2/3 of the time.

accident.[7] As evidence of Thomas' inadequate efforts, Greenwich cites his refusal to submit to personal examination by Ms. Mocarski, a vocational consultant retained by Greenwich; the attachment of his functional capacity evaluation, detailing his physical limitations, to his job applications; and finally, Greenwich's purported offer of any position at the company to Thomas. Rejecting each of these arguments, the ALJ concluded that Thomas pursued employment with Greenwich and other companies in good-faith after the accident. Substantial evidence supports the ALJ's determination. Thomas was eager to return to work after his accident. Against Dr. Lefkoe's advice, he accepted a position as a top pick operator in April of 2005, but sustained neck injuries on his first day of work. A. 16a. Greenwich responds that it was eager to "accommodate him [Thomas] as necessary if these positions [top pick operator or yard horse operator] proved to be too difficult", but that its overtures were met by inaction on the part of Thomas. Petitioners' Br. at 29. Greenwich's assertion is unsupported. Greenwich offered Thomas only two positions at the company -- top pick operator and yard horse operator. A. 17a. Even after Thomas expressed interest in a job as a crane operator, a less strenuous position, and even after Thomas strained his neck while operating the top pick,

_____

[7]Although diligence is directly relevant to Thomas' claim for total disability, *Palombo*, 937 F.2d at 73, it is also relevant to the ALJ's award of partial disability. Had Thomas obtained alternative employment, even at lesser pay, it would be significant evidence of his residual earning capacity. *See* 33 U.S.C. § 908 (allowing determination of partial disability to be based on "any other factors or circumstances in the case which may affect [the claimant's] capacity to earn wages in his disabled condition).

Greenwich offered him no other position. A. 15a. We decline to interpret Greenwich's failure to offer Thomas suitable employment as evidence of Thomas' bad-faith in returning to work.

We also find that Thomas displayed vigilance in seeking employment outside his current place of employment. Dr. Chaiken testified that Thomas was highly cooperative during the placement process, applying for positions at six different companies. A. 24a. Contrary to Greenwich's contention, Thomas appended his functional capacity evaluation to job applications *at Dr. Chaiken's suggestion* in order to provide an accurate picture of his physical capabilities – not to sabotage his employment prospects. A. 24a.

Finally, Greenwich makes much of Thomas' refusal to submit to a personal examination by Ms. Mocarski. Whether or not Thomas should have done so, Greenwich suffered no prejudice by his refusal. Using Thomas' extensive medical records, Ms. Mocarski prepared a comprehensive survey of suitable employment opportunities in the area. A. 24a-25a. The ALJ determined that four of the positions identified were within Thomas' job restrictions. Greenwich does not explain why Ms. Mocarski had to examine Thomas to prepare the survey, or identify material information that such an examination of Thomas would have produced, which could not be gleaned from Thomas' detailed medical records. Thus, Thomas' refusal to submit to a personal examination did not

13

prejudice Greenwich.[8]

## III.

For the foregoing reasons, we will DENY the Petition for Review.

---

[8] Alternatively, Greenwich argues that the ALJ employed an improper methodology to calculate the reduction in Thomas' wages resulting from his disability. To determine Thomas' post-injury, wage-earning capacity, the ALJ *averaged* the salary ranges of the four suitable positions identified by Ms. Mocarski. Greenwich maintains that this was error. The ALJ, Greenwich contends, should have used the salary of the *highest-paying* position identified by Ms. Mocarski, rather than the *average* salary of all suitable positions identified. Greenwich offers no authority or analysis for its position, to which it devotes a single sentence of its brief. Petitioners' Br. at 39. We conclude, as the BRB did, that the ALJ's method for calculating Thomas' post-injury, wage-earning capacity was reasonable and within the administrative law judge's substantial discretion on the issue. *See Avondale Industries, Inc. v. Pulliam*, 137 F.3d 326, 328 (5th Cir. 1998); *Shell Offshore, Inc. v. Director, OWCP*, 122 F.3d 312, 318 (5th Cir. 1997), *cert. denied*, 523 U.S. 1095 (1998).