930 F.2d 424
 1993 A.M.C. 2106
 P & M CRANE CO. and Aetna Casualty & Surety Company, Petitioners,
v.
Arlo R. HAYES and Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
SUDERMAN STEVEDORES and Texas Employers' Insurance
Association, Petitioners,
v.
Godfrey A. GREEN and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 Nos. 90-4376, 90-4460.
 United States Court of Appeals,
Fifth Circuit.
 April 22, 1991.
Rehearing and Rehearing En Banc
Denied June 3, 1991.
 
 Steven L. Roberts, Fulbright & Jaworski, Houston, Tex., for petitioners in No. 90-4376.
 David L. Monroe, Coleman, Bartlett & Assoc., Houston, Tex., for Hayes.
 Karen B. Kracov, Carol DeDeo, Assoc. Sol., U.S. Dept. of Labor, Washington, D.C., for director in No. 90-4376.
 Linda M. Meekins, Clerk, Dept. of Labor, BRB, Washington, D.C., for other interested parties.
 Julia M. Adams, Fulbright & Jaworski, Houston, Tex., for petitioners in No. 90-4460.
 Sarnie A. Randle, Jr., Houston, Tex., for Green.
 Michael S. Hertzig, Carol DeDeo, Assoc. Sol., U.S. Dept. of Labor, Washington, D.C., for director in No. 90-4460.
 On Petition for Review of Final Orders of the Benefits Review Board.
 Before REAVLEY, JONES and SMITH, Circuit Judges.
 JERRY E. SMITH, Circuit Judge:
 
 
 1
 These two cases, consolidated for oral argument, involve injured workers covered by the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. Secs. 901-950. In each instance, the employer petitioners ("employers") contest the holdings of the Benefits Review Board (BRB) that employers can satisfy their alternative employment burden of proof only by providing evidence of more than one specific job opening, in the local community, suitable for an injured claimant, considering his skills and physical limitations. The employers believe that the BRB erroneously applied the reasoning of Lentz v. Cottman Co., 852 F.2d 129, 131 (4th Cir.1988), and Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs, 629 F.2d 1327, 1330 (9th Cir.1980), instead of our decision in New Orleans (Gulfwide) Stevedores v. Turner, 661 F.2d 1031, 1040 (5th Cir. Unit A Nov. 1981), in which we held that evidence of specific employment openings is not required for an employer to satisfy its burden of proof on this issue.
 
 
 2
 We agree with the employers that the BRB failed adequately to apply the Turner standard, and we therefore vacate and remand. In doing so, it is not necessary for us to consider the second question presented by petitioner P & M Crane Company (P & M Crane) concerning respondent Arlo Hayes's average weekly wage under section 10(c) of the LHWCA, 33 U.S.C. Sec. 910(c).
 
 I.
 
 3
 A. P & M Crane Co. v. Hayes.
 
 
 4
 Hayes had been employed as a crane mechanic by P & M Crane for about two and one-half weeks when, on April 10, 1984, he injured his lower back. As a result of that injury and subsequent operations, he was permanently disabled from employment as a crane mechanic and was prevented from undertaking employment that required heavy lifting, prolonged bending or stooping, or working on ladders or overhead. Although he claims to have attempted to locate suitable employment, he has not found a job since his injury. Testimony was presented at the hearing before the administrative law judge (ALJ) that Hayes informed his physician that he did not desire to obtain employment, even though he may have been able to do so, because he wanted to await the ALJ's decision.
 
 
 5
 Proceedings were held before the United States Department of Labor (DOL) concerning Hayes's claim for compensation benefits under the LHWCA. On January 19, 1988, an ALJ entered a decision and order awarding benefits, finding that Hayes was totally and permanently disabled under the LHWCA. The ALJ determined that his average weekly wage would be $744.65. P & M Crane and its insurer, Aetna Casualty & Surety Co. (Aetna), then appealed to the BRB, which affirmed.
 
 
 6
 The ALJ's decision dealt with two main issues[1]: (1) the extent of Hayes's disability and (2) his average weekly wage.[2] While it was undisputed that Hayes was permanently disabled from resuming his employment as a crane mechanic, a question existed as to whether he was able to secure suitable employment in the local community, given his physical restrictions. At the ALJ's hearing, Aetna's vocational rehabilitation expert, William Kramberg, produced a report claiming that there was alternative work available to Hayes which he could perform, given his medical restrictions. The report, however, identified only one specific job, a marine dispatcher.[3]
 
 
 7
 Nevertheless, Kramberg also testified that security, light delivery, cashier, and courier jobs currently were available in the local community. Kramberg further stated that Hayes was eligible for vocational rehabilitation. Such training, Kramberg believed, would take from one to three years to complete.[4]
 
 
 8
 The ALJ determined that Hayes had made a prima facie showing of total and permanent disability. Pursuant to Turner, the ALJ held that the burden of proof then shifted to P & M Crane to show that suitable alternative employment was available to the claimant. See Turner, 661 F.2d at 1038. But since P & M Crane only demonstrated that one specific job was available, the ALJ found that it had failed to establish suitable alternative employment and held that Hayes was totally disabled. The ALJ relied heavily upon the Fourth Circuit's decision in Lentz, which held that a single specific job identified by a vocational rehabilitation expert does not establish suitable alternative employment. See Lentz, 852 F.2d at 131. The ALJ also did not give much consideration to the other more general employment opportunities available to Hayes in the local community.
 
 
 9
 P & M Crane and Aetna petitioned the BRB for review. The BRB held that the findings of fact and conclusions of law of the ALJ were rational, supported by substantial evidence, and in accordance with the law. It maintained that Kramberg's vocational rehabilitation testimony was insufficient to establish alternative employment because he did not identify the precise nature and terms of jobs available after June 1986, other than one opening. The BRB further held that the ALJ's reliance upon Lentz was not error under the law of this circuit. It also upheld the ALJ's calculation of Hayes's average weekly wage rate.[5]
 
 
 10
 B. Suderman Stevedores v. Green.
 
 
 11
 Respondent Godfrey Green filed for compensation under the LHWCA for a lower back injury he sustained on June 13, 1983, in the course of his employment with petitioner Suderman Stevedores (Suderman). A hearing was held before the ALJ on June 2, 1987, and over a year later he found that Green was entitled to temporary total disability from June 13, 1983, through October 5, 1985, based upon an average weekly wage of $169.83, and permanent total disability from October 5, 1985, and continuing, based upon the same average rate.
 
 
 12
 Green's inability to perform his usual longshore work was not disputed, and the ALJ found that Suderman failed to establish the availability of suitable alternative employment. The ALJ held that three of the four specific jobs found by Suderman's expert, William Quintanilla, were not suitable.[6] Quintanilla mistakenly failed to inform the prospective employers of Green's prescribed medication, which decreased his concentration and made him groggy, a fact the expert concedes. Although Quintanilla did discuss, with Green, general employment as a bookkeeper, manager, paralegal, bank teller and customer service representative,[7] such a discussion was initiated by Green, and Quintanilla made no inquiries into the availability of such jobs in the local community.
 
 
 13
 The ALJ then relied upon Lentz and concluded that, without more, the existence of the sole remaining position could not constitute suitable alternate employment. Suderman appealed to the BRB, which, in a decision and order dated April 26, 1990, affirmed the ALJ's decision, holding that the ALJ's reliance upon Lentz was proper.
 
 II.
 
 14
 We review decisions of the BRB for errors of law and adhere to the substantial evidence standard that governs the BRB's review of the ALJ's factual determinations. Odom Constr. Co. v. DOL, 622 F.2d 110, 115 (5th Cir.1980), cert. denied, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981); Diamond M. Drilling Co. v. Marshall, 577 F.2d 1003, 1005 (5th Cir.1978). Thus, the BRB's decision must be affirmed if it correctly concluded that the ALJ's findings are supported by substantial evidence and are in accordance with the law. O'Keeffe v. Smith, Hinchman & Grylls Assocs., Inc., 380 U.S. 359, 362-63, 85 S.Ct. 1012, 1014-15, 13 L.Ed.2d 895 (1965).
 
 III.
 
 15
 The employers in these two cases claim that the ALJ and the BRB applied the wrong legal standard in holding that they, as employers, did not establish the availability of suitable alternative employment. They maintain that by presenting evidence of the availability of one specific job, along with more general information concerning other existing jobs that each claimant is qualified to hold, they should be able to rebut the claimants' prima facie case of total disability.
 
 
 16
 In P & M Crane, the vocational rehabilitation expert employed by the employer found one specific job suitable for Hayes, and he had general information on a number of possible other jobs available in the area. In Suderman, the employer's expert had information on only one specific job. Although he claimed that Green was eligible to obtain various types of minimum wage jobs, the expert did not specify whether such jobs were available in the local community.
 
 
 17
 Both employers believe that the higher standard advocated by the BRB and by the Fourth Circuit in Lentz is simply a restatement of the theory embraced by the Ninth Circuit in Bumble Bee Seafoods. Such a standard, they contend, violates Turner because it would force employers to become employment agencies and would require them to hire vocational rehabilitation experts to conduct numerous labor market studies and interviews.
 
 
 18
 The employers further maintain that such a hightened standard would require them not only to find suitable employment for their injured employees, but also to search for bona fide offers for them, a task that, they maintain, would be difficult to achieve. In the employers' opinions, this standard places too much of the job-search burden upon them and fails to penalize many injured employees who, they believe, simply do not wish to search for new jobs.[8]
 
 
 19
 The claimants, however, believe that the ALJ and the BRB correctly decided that the mere presentation of one specific alternate job does not satisfy the employer's burden of proof. They assert that the BRB's reliance upon Lentz merely expanded on our Turner decision by holding that it is "manifestly unreasonable" to conclude that a claimant has a chance of obtaining a single specific job found by an employer in the local community.
 
 
 20
 Indeed, the claimants maintain that if an employer's vocational expert cannot find more than one specific job that is suitable for a partially disabled employee, it is therefore reasonable to assume that the employee will not be able to secure that position because of job competition. Even though such an employer may have described generally other jobs that the employee could perform in the local community, claimants contend that such jobs are usually only descriptions of categories that provide the claimant with little information upon which to conduct his job search.[9]
 
 
 21
 The claimants also believe that the Lentz decision does not implicitly adopt the logic of Bumble Bee, but instead is consistent with Turner and Rogers Terminal. They point out that the Fourth Circuit's caselaw in this area relies upon our decisions and has interpreted Turner as holding that while an employer does not have to provide its employee with specific job offers, it must adequately demonstrate that there exists a range of jobs that the claimant can perform. See Lentz, 852 F.2d at 131 (citing Roger's Terminal, 784 F.2d at 691).
 
 
 22
 Even though they realize that an employer need not present information concerning such job openings directly to its employee, Turner, 661 F.2d at 1043, the claimants here maintain that an employer must establish the nature and terms of realistic job opportunities available to a claimant. See Reiche v. Tracor Marine, Inc., 16 BRBS 272, 274 (1984). Such a requirement, claimants contend, would not force employers to become employment agencies any more than they are at present. Rather, it would require them to provide support for their contentions that alternate employment exists in the community for their injured employees.
 
 
 23
 In both of the instant cases, it is uncontested that the claimants are unable to return to their usual positions as longshoremen as a result of their injuries. Both claimants therefore have established prima facie cases of total disability, which then shifts the burden to the employers to demonstrate the availability of suitable alternative employment that the injured workers are capable of performing. See Odom Constr. Co., 622 F.2d at 115-16.
 
 
 24
 In Turner, we developed a two-pronged test by which employers can meet this alternate employment burden:
 
 
 25
 (1) Considering claimant's age, background, etc., what can the claimant physically and mentally do following his injury, that is, what types of jobs is he capable of performing or capable of being trained to do?
 
 
 26
 (2) Within this category of jobs that the claimant is reasonably capable of performing, are there jobs reasonably available in the community for which the claimant is able to compete and which he could realistically and likely secure? This second question in effect requires a determination of whether there exists a reasonable likelihood, given the claimant's age, education, and vocational background that he would be hired if he diligently sought the job.
 
 
 27
 661 F.2d at 1042 (emphasis added, footnote omitted). Once the employer meets the burden of proof established in Turner, the claimants may still establish total disability if they demonstrate that they diligently tried and were unable to secure such employment. Roger's Terminal, 784 F.2d at 691.
 
 
 28
 We specifically determined in Turner that Bumble Bee 's stringent standard requiring employers "to point to specific jobs that the claimant can perform" should not apply in this circuit. Turner, 661 F.2d at 1042 (quoting Bumble Bee, 629 F.2d at 1330).[10] Although it has been held that an employer's offer of a new suitable job to the disabled employee within his current place of work, see Darden v. Newport News Shipbuilding & Dry Dock Co., 18 BRBS 224, 226 (1986), and such employer's obtaining of a definite offer from another employer for the employee, see Shiver v. United States Marine Corps., 23 BRBS 246, 250-51 (1990), may satisfy the employer's alternate employment burden of proof, we do not require that employers either make or secure such specific offers for their employees. Turner, 661 F.2d at 1042.
 
 
 29
 Such a requirement would force many employers to become employment agencies, a result that would decrease the incentives for injured employees to seek out rehabilitation and retraining. Id. Rather, Turner requires only that employers demonstrate "that at the critical times there were jobs reasonably available within [the claimant's] capabilities and for which [he] was in a position to compete realistically had he diligently tried."[11] Id. at 1043.
 
 
 30
 Thus, to the extent that the BRB decided that the employers here were required to provide evidence of more specific job openings in the local community, we hold that it was mistaken. Turner specifically rejected the reasoning of Bumble Bee and held that an employer simply may demonstrate the availability of general job openings in certain fields in the surrounding community. We do not read the law as requiring an employer to serve as an employment agency and to secure specific job vacancies for an injured employee. As we said in Turner, such a holding would provide a claimant with little incentive to seek rehabilitation or job retraining.
 
 
 31
 Also, we disagree with the holding in Lentz that an employer's demonstration of only one employment opportunity in the local community is manifestly insufficient for it to satisfy its alternate employment burden of proof. We do not believe that Turner specifically requires an employer to present a range of jobs that its injured employee can obtain. Although we may have used imprecise language when we described the two-step alternate employment standard in Turner (such as "what types of jobs," "within this category of jobs," and "are there reasonable jobs available" (emphasis added)), we do not believe that this wording automatically prevents an employer from satisfying its alternate employment burden with the listing of one available job. Indeed, toward the end of our discussion of this alternate employment standard in Turner, we spoke of an employer's use of a single job to satisfy its burden of proof on this issue when we stated "that [the claimant] would be hired if he diligently sought the job." 661 F.2d at 1043 (emphasis added).
 
 
 32
 Moreover, our decision in Turner leaves open the possibility that an employee may have a reasonable likelihood of obtaining such a single employment opportunity under appropriate circumstances. Such an opportunity could well exist, for example, where the employee is highly skilled, the job found by the employer is specialized, and the number of workers with suitable qualifications in the local community is small. By adopting Lentz 's prohibition against the use of such single-job demonstrations by the employer, we would violate Turner by using an inflexible rule that would restrict the employer's ability to satisfy this requirement. Since Turner dictates that these alternate jobs need to be "reasonably available" in the local community, id. at 1042, whether the one job identified by the employer's expert is actually available would be a factual determination for the particular case.
 
 
 33
 Here, we do not have a factual situation similar to that in Lentz. Both employers appear to have described a number of other general employment opportunities that were available in the local communities--opportunities that the ALJ and BRB may have failed to consider.[12] Indeed, Turner specifically approved of the use of such general employment opportunities or categories by employers. See 661 F.2d at 1042-43. Thus, it is important for the BRB to reexamine each of these factual situations in light of the two Turner requirements. Specifically, it should determine whether each employer has demonstrated that its proposed specific and general jobs are within the respective claimant's physical and mental capacities and whether those jobs are realistically available to each claimant in his local community.
 
 IV.
 
 34
 Accordingly, we VACATE the orders of the BRB in both cases and REMAND for further proceedings consistent herewith. As we are vacating the BRB's decision in P & M Crane, it is not necessary for us to determine whether the court's wage rate in that case was sufficient.
 
 
 
 [1]
 A third issue, special fund relief, was considered but is not raised on appeal
 
 
 [2]
 As we have decided to vacate and remand the decision of the BRB in these two cases, it is not necessary to set forth the details of the court's wage rate determination in P & M Crane. The ALJ found the calculation of Hayes's average weekly wage difficult to determine. Because Hayes had worked for P & M Crane for only 14 days prior to his injury, Sec. 10(a) of the LHWCA, 33 U.S.C. Sec. 910(a), could not be applied. The ALJ also found Sec. 10(b) inappropriate because there was no evidence of an employee of the same classification and wage rate who worked through the whole of the year preceding Hayes's injury. The ALJ resolved the problem by using the number of hours worked by two of Hayes's co-employees the preceding year, multiplied by the rate of pay Hayes received ($15.62/hr.). Following this formula, the ALJ reached an average weekly wage of $744.65, which equals a yearly figure of $38,721.98
 In arriving at this wage rate, the ALJ rejected P & M Crane's argument that Hayes's earnings should be based upon his self-employment income for the year prior to the accident, with a 30% reduction for self-employment taxes. The ALJ decided not to utilize this formula, as it would not have reflected Hayes's annual earning capacity, but rather his taxable income, which was not what the LHWCA required. The ALJ also found that the 30% reduction was not supported by the evidence. He further found that P & M Crane's suggested average weekly wage of $227.46 would be earned by Hayes in less than two eight-hour days, considering Hayes's wage rate. As such, the ALJ held that P & M Crane's formula would not reasonably reflect Hayes's annual earning capacity at the time of injury.
 
 
 [3]
 In a subsequent deposition, Kramberg revealed that the job actually had not been available at the time of the hearing or thereafter
 
 
 [4]
 Although Turner specifically requires employers to consider what types of jobs a claimant can obtain upon retraining, see 661 F.2d at 1042, claimants are not required by the LHWCA to participate in rehabilitation programs. Price v. Dravo Corp., 20 BRBS 94, 97 (1987)
 
 
 [5]
 Specifically, the BRB determined that the ALJ's wage rate calculation followed the plain language of Sec. 10(c) and reasonably focused upon Hayes's actual earnings at the time of injury, rather than upon his prior earnings while he was self-employed. The BRB also held that the ALJ reasonably used its discretion when it decided that Sec. 10(c) properly excluded any downturn in P & M Crane's business that had occurred after Hayes's date of injury
 
 
 [6]
 Quintanilla also suggested to Green that he participate in one of a variety of self-employment programs
 
 
 [7]
 Quintanilla testified at the ALJ's hearing that Green probably was unqualified to pursue a number of these jobs
 
 
 [8]
 The determination as to the willingness of an injured employee to seek out alternate employment, however, is not a factor to be considered until after the employer has satisfied its burden of proof that suitable alternate employment is available. Once this burden is met, if a claimant cannot show that he actively sought out such employment, his case for permanent and total disability fails. Rogers Terminal & Shipping Corp. v. Director, OWCP, 784 F.2d 687, 691 (5th Cir.), cert. denied, 479 U.S. 826, 107 S.Ct. 101, 93 L.Ed.2d 51 (1986)
 
 
 [9]
 Claimants contend that an employer should be required to demonstrate the availability of specific jobs within a community in order to facilitate its injured employee's job search. By merely describing general job categories that meet the employee's skills and physical limitations, claimants believe that notices of such general vacancies do little to help the worker obtain employment. In such a situation, an employer would have an incentive to list overly broad categories so that an employee would not be able to satisfy his job search requirements easily. Claimants further argue that if an employer can locate general job openings in a community, it can easily identify a few companies with specific vacancies
 We disagree. While it is not our task to determine the cost to an employer of identifying such specific job vacancies, we adhere to Turner and hold that an employer is not required under the LHWCA to demonstrate that specific jobs exist for its injured employee in the local community. See Turner, 661 F.2d at 1043. Moreover, since Turner holds that an employer need not present such job vacancies directly to its employee, id., claimants' argument loses much of its validity. An employer must present these job openings to the court to satisfy its burden of proof on the alternate employment issue, and not to its employee so as to facilitate his job search.
 
 
 [10]
 Our position is consistent with the regulations adopted by the Social Security Administration (SSA) for its disability program. In Turner, 661 F.2d at 1042 n. 15, we noted the similarity. While we have determined that the LHWCA provides that the term "realistically available work" refers to employment that is present in the claimant's local community, Turner, id. at 1042, the SSA regulations consider the term to mean that "work exists in the national economy when it exists in significant numbers either in the region where [one] live[s] or in several other regions of the country." 20 C.F.R. Sec. 404.1566(a) (1988). Nevertheless, the SSA regulations state that for an employer to satisfy this alternate employment burden, it makes no difference whether
 (1) Work exists in the immediate area in which [the claimant] live[s];
 (2) A specific job vacancy exists for [the claimant]; or
 (3) [The claimant] would be hired if [he] applied for work.
 
 
 [20]
 C.F.R. Sec. 404.1566(a) (emphasis added)
 Even though the LHWCA differs from the SSA's disability provisions, it appears that neither program requires employers to find specific job openings within a claimant's relevant community. Indeed, the SSA regulations only require that an employer demonstrate that there are a significant number of general employment vacancies within certain job categories in the national economy. Similarly, the instant employers are required, under the LHWCA, only to demonstrate that a number of jobs exist, in the local community, that the claimants are qualified to fill and had a reasonable opportunity to secure.
 
 
 [11]
 Such alternate employment positions need not be available during the entire period when the injured employee is seeking work. Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 543 (4th Cir.1988). They need only be available during critical periods after an employee's maximum health potential has been demonstrated. See Turner, 661 F.2d at 1043
 
 
 [12]
 Concluding that the BRB wrongly applied the Lentz test to this situation, we do not decide whether Kramberg's or Quintanilla's information on general employment opportunities satisfied the Turner standard. Such a decision should be left to determination on remand