**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BRIAN LARRY DODGE,
Petitioner,

v.

ABACUS SERVICES; DIRECTOR, OFFICE

No. 96-2561

OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR; TRAVELERS
INSURANCE COMPANY,
Respondents.

ABACUS SERVICES; TRAVELERS
INSURANCE COMPANY,
Petitioners,

v.

No. 96-2591

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
Respondent.

On Petitions for Review of an Order
of the Benefits Review Board.
(BRB No. 95-569)

Argued: July 9, 1997

Decided: August 12, 1997

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge,
and BOYLE, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Harlow Klein, RUTTER & MONTAGNA, L.L.P., Norfolk, Virginia, for Petitioners. Robert Alan Rapaport, KNIGHT, DUDLEY, CLARKE & DOLPH, P.L.C., Norfolk, Virginia, for Respondents. **ON BRIEF:** Matthew H. Kraft, RUTTER & MON-TAGNA, L.L.P., Norfolk, Virginia, for Petitioner Dodge. Lynne M. Ferris, KNIGHT, DUDLEY, CLARKE & DOLPH, P.L.C., Norfolk, Virginia, for Respondent Abacus.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This worker's compensation case arises under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq. ("LHWCA" or "Act"). Brian L. Dodge ("Dodge"), and his former employer, Abacus Temporary Services ("Abacus"), both seek review of a final decision of the Benefits Review Board ("BRB") ordering Abacus to pay Dodge compensation for permanent partial disability. Dodge argues that the Administrative Law Judge ("ALJ"), whose Decision and Order was affirmed by the BRB, (i) improperly denied Dodge's claim for permanent total disability benefits, (ii) improperly calculated Dodge's average weekly wage, and (iii) improperly determined Dodge's award for his permanent partial disability. Abacus argues that the ALJ (i) improperly denied Abacus's motion to reopen the record to address the existence of an employee/employer relationship, and (ii) improperly calculated Dodge's average weekly wage.

We conclude that the ALJ's findings are supported by substantial evidence in the Record, and in accordance with the law, and that the

2

ALJ properly denied Abacus's motion to reopen the record to address the existence of an employee/employer relationship. Accordingly, we affirm the decision of the BRB.

I.

On October 14, 1988, Dodge injured his right arm and right shoulder while working as a rigger for Metro Machine Shipyard ("Metro"). At the time of the accident, Dodge was a temporary employee of Abacus, and it was Abacus who had sent Dodge to work for Metro.

As a result of his injury, Dodge was temporarily totally disabled from October 20, 1988, through May 1, 1989, and again from May 22, 1989, through March 3, 1992. Abacus paid Dodge benefits for the duration of his temporary total disability, and those benefits are not at issue.

On March 4, 1992, Dr. Pat Aulicino, who had performed two operations on Dodge, one to his elbow and the other to his shoulder, determined that Dodge had reached maximum medical improvement. Dr. Aulicino assigned Dodge permanent work restrictions, which included no climbing of vertical ladders, no lifting over 30 pounds with the right arm, and no overhead work. Dr. Aulicino also assigned Dodge an 11% impairment of his right upper extremity, 10% of which was attributable to his arm, and 1% of which was attributable to his shoulder.

After being discharged from Dr. Aulicino's care, Dodge participated in vocational rehabilitation with the Department of Labor's Office of Workers' Compensation Programs ("OWCP"). Mark Willis ("Willis"), a vocational counselor at the OWCP, arranged for Dodge to participate in an on-the-job training program at W.C. Billings ("Billings"), a lawn mower repair business, where Dodge was to learn how to fix lawn mower engines. Dodge started working at Billings in August of 1992, but then had to quit after about 40 days, because the work was too strenuous.

In April of 1993, Dodge met with Charles DeMark, Jr. ("DeMark"), a "rehabilitation counselor" who had been hired by

3

Dodge's attorney, and who had no affiliation with the OWCP. After assessing Dodge's physical and mental capabilities, DeMark looked in the classified ads of a local newspaper and told Dodge that there were a number of jobs for which Dodge was qualified, such as a courier, a driver for an airport shuttle, a dry cleaning clerk, a greenhouse attendant, and a service station attendant, all of which DeMark assumed paid about minimum wage or a little bit higher. DeMark told Dodge that he should look in the classified ads for the above-named jobs, or for jobs that required similar qualifications. But rather than following DeMark's advice, Dodge continued to look for work in the same haphazard fashion that he had been looking for work since he was first injured in 1988, by simply inquiring at"places that I picked out, rode around, stopped at, and seen if they needed any help," without first determining if these places were actually hiring. (JA at 102).

On October 4, 1993, a hearing was held before the ALJ on Dodge's claim, under the LHWCA, for permanent total disability benefits, or, alternatively, permanent partial disability benefits. A supplementary hearing was held before the ALJ on November 12, 1993, for the hearing of additional evidence.

In July of 1994, before the ALJ issued his Decision and Order, Abacus filed a Motion to Reopen Record and Add an Additional Issue, in which Abacus sought to withdraw its prior stipulation that it was Dodge's employer under the LHWCA, and to reopen the Record to address the existence of an employee/employer relationship. On September 27, 1994, the ALJ issued an Order denying Abacus's motion, on the grounds that Abacus's stipulation that it was Dodge's employer was dispositive, and not retractable.

On October 3, 1994, the ALJ issued his Decision and Order, in which he determined (i) that Dodge was not entitled to permanent total disability benefits, (ii) that Dodge's pre-injury average weekly wage was $613.68, based on Dodge's total earnings during the 52 weeks prior to his injury, divided by 52 and (iii) that Dodge was entitled to permanent partial disability benefits, for the unscheduled injury to his shoulder, amounting to 9% of his wage earning capacity loss, or $39.93 per week.

Dodge filed a timely notice of appeal to the BRB, and Abacus filed a Cross-Petition for Review. On September 12, 1996, the ALJ's Deci-

sion and Order was affirmed by the BRB under the provisions of Public Law 104-134 (Omnibus Appropriations of Fiscal Year 1996), which provides that appeals from decisions under the LHWCA which have been pending before the BRB for more than one year shall, if not acted upon before September 12, 1996, be considered affirmed by the BRB and shall be considered the final order of the BRB for purposes of obtaining review in the United States courts of appeal. This appeal followed.

II.

The ALJ's decision must be upheld so long as it is supported by substantial evidence in the Record and is in accordance with the law. P & M Crane Co. v. Hayes, 930 F.2d 424, 428 (5th Cir. 1991).

A.

Dodge's first argument, that the ALJ improperly denied Dodge's claim for permanent total disability benefits, is meritless. Dodge's own witness at the hearing, Mr. DeMark, testified that there were many available jobs that Dodge could perform, such as courier, airport shuttle driver, dry cleaning clerk, greenhouse attendant, service station attendant, parts clerk, and security guard. Since Dodge failed to prove that his inability to obtain employment was the product of a diligent -- and not desultory -- effort to find a job, the ALJ had no reason to discredit Mr. DeMark's testimony.

B.

Both Dodge and Abacus argue that the ALJ improperly calculated Dodge's average weekly wage, despite the fact that both Dodge and Abacus, when they appeared before the ALJ, agreed that the ALJ's method of calculation was not improper. We agree with Dodge's and Abacus's initial stance. The ALJ, under the broad guidance of 33 U.S.C. § 910(C), which provides, in relevant part, that the average weekly wage of the injured employee at the time of the injury "shall reasonably represent the annual earning capacity of the injured employee," determined that Dodge's average weekly wage at the time of his injury was the amount of money that Dodge had made during

5

the 52 weeks prior to his injury, divided by 52. This was certainly a reasonable method of calculation, and there is no reason to tamper with it.

C.

Dodge next argues that the ALJ improperly limited Dodge's award for permanent partial disability benefits to an amount "well below the actual loss he clearly suffered." We disagree.

Dodge's loss in earning capacity resulted from one accident, comprising two discrete injuries: 1) an injury to his arm, for which Dodge has already been compensated under the schedule set forth in 33 U.S.C. § 908(c)(1)-(20), and which is not at issue in this case, and 2) an unscheduled injury to his shoulder, for which Dodge is entitled to compensation under 33 U.S.C. § 908(c)(21), which provides that "[i]n all other cases in the class of disability [i.e., those that do not involve scheduled injuries], the compensation shall be 66[and two-thirds] per centum of the difference between the average weekly wages of the employee and the employee's wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of partial disability."

According to Dodge, even though his loss in earning capacity is only partially attributable to his shoulder injury, he is still entitled, under § 908(c)(21), to receive two-thirds of his entire loss in earning capacity, which would seem to ignore the fact that he has already been compensated for his loss in earning capacity due to his arm injury under the provisions of § 908(c)(1)-(20). The ALJ, appropriately, rejected Dodge's method of calculation, and adopted Abacus's proposal, which is that Dodge should receive permanent partial disability benefits under § 908 (c)(21) for the loss in earning capacity attributable to Dodge's shoulder injury, and nothing more. See, e.g., Frye v. Potomac Electric Power Co., 21 BRBS 194, 198 (1988) (when a claimant suffers two distinct injuries as a result of a single accident, one of which is compensable under the schedule set forth in § 908(c)(1)-(20), and one of which is compensable under § 908(c)(21), "since the scheduled injury is being compensated separately, any loss in wage earning capacity due to the scheduled injury must be factored out of the § [908](c)(21) award").

6

In an effort to determine the loss in earning capacity attributable to Dodge's shoulder injury alone, the ALJ reasoned that because Dodge's 1% impairment of his shoulder amounted to only one-eleventh, or 9%, of his total impairment of 11% (1% impairment to shoulder + 10% impairment to upper arm), therefore, the shoulder injury amounted to only one-eleventh, or 9%, of Dodge's loss in earning capacity.*

The ALJ's decision to "factor out" the loss in earning capacity attributable to Dodge's scheduled injury was perfectly rational, and in accordance with the purpose of 33 U.S.C. § 908(c)(21), which, by its clear terms, is to provide disability benefits for a loss in earning capacity <u>due to an unscheduled injury</u>, not due to an unscheduled injury and a scheduled injury for which the claimant has already been compensated.

D.

Finally, Abacus argues that the ALJ improperly denied Abacus's motion to reopen the record to address the existence of an employee/employer relationship. We disagree. As this Court recently held in <u>Abacus Temporary Services, Inc. v. Hicks</u>, 1997 WL 346061 (4th Cir.), "[h]aving voluntarily entered into a stipulation agreeing that the company was [the claimant's] employer . . . Abacus must live with its terms."

III.

For the foregoing reasons, the decision of the BRB is affirmed.

<u>AFFIRMED</u>
_____

*The ALJ, for reasons that are not entirely clear, decided to award Dodge 9% of his <u>entire loss in earning capacity</u>, rather than 9% of <u>two-thirds</u> of his entire loss in earning capacity, which is required under § 908(c)(21), and which would have resulted in an award to Dodge of approximately $26.75 a week, as opposed to the $39.93 a week that he received. In his Decision and Order, the ALJ referred to a "reasonable concession" on the part of Abacus, and perhaps the concession to which he refers is Abacus's willingness to forego the initial, one-third reduction in earning capacity. Regardless, suffice it to say that neither Dodge, nor Abacus, have appealed this aspect of the ALJ's method of calculation.

7