**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-60569
Summary Calendar

AVONDALE INDUSTRIES, INC.,

Petitioner

VERSUS

RODNEY PULLIAM; DIRECTOR, OFFICE OF WORKER'S COMPENSATION
PROGRAMS, U.S. DEPARTMENT OF LABOR,

Respondents

Petition for Review of an Order of the
Benefits Review Board

March 31, 1998

Before  DUHÉ, DeMOSS, and DENNIS, Circuit Judges.

JOHN M. DUHÉ, JR., Circuit Judge:

Appellee injured his shoulder and sued Appellant, his former employers, for permanent and total disability payments under the Longshore and Harbor Workers' Compensation Act.  The administrative law judge awarded him permanent, partial disability payments and calculated his wage earning capacity by averaging the hourly wage of five jobs which Appellant had found for Appellee.  The Benefits Review Board affirmed.  The res nova issue presented is the proper method of computing post-injury wage earning capacity when the employer locates more than one suitable job for the claimant.  We

affirm the ALJ's use of averaging.

## I

In May 1992, Rodney Pulliam ("Pulliam"), a sheet metal mechanic for Avondale Shipyards ("Avondale"), fell off a scaffold and injured his shoulder. Pulliam continued to work for Avondale until July when he quit.

In February 1994, Pulliam underwent surgery on his shoulder but was not able to return to work until January 1995. In the meantime, Avondale hired a certified rehabilitation counselor to analyze Pulliam's ability to be re-employed. The counselor conducted a labor market survey to identify jobs within Pulliam's mental and physical capabilities as well as his geographic area. The counselor found forty-four such jobs, none of which Pulliam secured.

Pulliam sued Avondale for permanent, total disability compensation under the Longshore and Harbor Workers' Compensation Act ("LWHCA"). In attempting to establish total disability, Pulliam argued to the administrative law judge ("ALJ") that he had diligently tried to obtain other employment, but that no one would hire him. He pointed to the fact that he contacted all but five[1] of the prospective employers. The ALJ disagreed, finding that Pulliam had not been diligent in his job search. Rather, the ALJ found that Pulliam had, in at least two instances, misrepresented

---

[1] We note that the ALJ stated that Pulliam contacted all but six of the prospective employers; however, we are concerned with only five of those jobs because Pulliam gave no explanation for failing to contact those prospective employers.

2

the status of his injury so as to hurt his chances of being hired. Thus, Pulliam was entitled only to permanent, partial disability.[2]

In calculating Pulliam's post-injury wage earning capacity, the ALJ averaged the hourly wage of the five jobs for which Pulliam did not apply. Avondale unsuccessfully appealed to the Benefits Review Board ("BRB") arguing alternatively that the ALJ should have based Pulliam's compensation on the highest wage of the five jobs and that the ALJ should have considered all forty-four jobs in his calculation. The BRB affirmed the ALJ's findings and adjusted the ALJ's calculation of the average.[3] Avondale now appeals to this court.

## II

When the BRB affirms an ALJ's decision, we may reverse the ALJ's decision only if it is not supported by substantial evidence and is not in accordance with the law. New Thoughts Finishing Co. v. Chilton, 118 F.3d 1028, 1030-31 (5th Cir. 1997). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564-65 (1988) (internal quotation marks omitted).

## A

While 33 U.S.C. § 908(c)(21) sets forth the formula for calculating an employee's lost wage earning capacity, it does not

---

[2]Under the LWHCA, the ALJ calculates loss of wage earning capacity by taking two thirds of the difference between the average of what the worker had earned and what the worker can earn post-injury. See 33 U.S.C. § 908(c)(21).

[3]The ALJ had initially found that the average of the five jobs was $5.25/hour. The BRB adjusted the average to $5.99/hour.

3

give any guidance for determining what the post-injury earning capacity is. Thus, the courts have determined post-injury earning capacity on a case by case basis. See Licor v. Washington Metropolitan Area Transit Authority, 879 F.2d 901 (D.C. Cir. 1989); Pilkington v. Sun Shipbuilding and Dry Dock, 9 B.R.B.S. 473.

Avondale argues that the BRB should have vacated and remanded the ALJ's decision because the ALJ used the average of the wages rather than the highest wage. In P & M Crane v. Hayes, 930 F.2d 424 (5th Cir. 1991), this Court held that an employer could satisfy its burden of proving alternate employment by showing that there was one job available in the local community. Here, Avondale points out that it more than satisfied its burden by showing that there were forty-four jobs available. Moreover, Avondale could have avoided this litigation altogether by finding the highest paying alternate employment for Pulliam. Instead, it provided Pulliam with a choice of forty-four jobs.

Avondale also urges this Court to reverse the ALJ's judgment based on policy. It contends that were we to affirm the ALJ, we would be discouraging other employers from attempting to find a range of suitable, alternate employment. To get around the averaging scheme, all an employer would have to find only one, high paying job. Thus, should we reverse the ALJ, we would be encouraging employers to find a range of alternate employment. We disagree.

First, we find the policy argument unpersuasive. The employer, to avoid paying permanent, total disability benefits, has

4

to show that there is suitable, alternate employment. We think it unlikely that an employer would risk having to pay permanent, total disability benefits by showing only one job available. Rather, the presumption that the employee is permanently and totally disabled would seem to encourage the employer to find as many alternate jobs as possible.

Second, in <u>Shell Offshore, Inc. v. Cafiero</u>, 122 F.3d 312, 318 (5th Cir. 1997), we held that averaging was a reasonable method for determining an employee's post-injury wage earning capacity. We now explain why. We have held that an employer need not show that a specific job opening is available when proving suitable, alternate employment. <u>See</u>, <u>Avondale Industries, Inc. v. Guidry</u>, 967 F.2d 1039 (5th Cir. 1992) (holding that an employer has to show only general availability). Thus, the courts have no way of determining which job, of the ones proven available, the employee will obtain. Averaging ensures that the post-injury wage earning capacity reflects each job that is available.

**B**

We now address Avondale's argument that the ALJ should have calculated Pulliam's post-injury wage earning capacity by using all forty-four jobs. Avondale argues that the ALJ acted improperly in finding that Pulliam was not diligent and that he had applied for all but five of the forty-four jobs. While we agree that these findings seem inconsistent, we give deference to an ALJ's findings of fact. <u>Wilkerson v. Ingalls Shipbuilding, Inc.</u>, 125 F.3d 904, 906 (5th Cir. 1997). It is reasonable that the ALJ could find that

5

Pulliam merely applied for most of the forty-four jobs and yet was not diligent in his job search.  Thus, we do not find error in the ALJ using the five jobs to determine the average.

## CONCLUSION

For the above reasons we AFFIRM.