**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-60051
Summary Calendar

PRIDE OFFSHORE, INC.; SIGNAL MUTUAL ASSOCIATION, LTD,

Petitioners,

VERSUS

JOHN S. BILLIOT; DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, US DEPARTMENT OF LABOR,

Respondents.

On Appeal From the Benefits Review Board,
U.S. Department of Labor

(99-0282)

November 22, 2000

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

Petitioners Pride Offshore and Signal Mutual Association

appeal the Decision and Order of the Benefits Review Board

affirming the Administrative Law Judge's award of temporary total

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

disability and temporary partial disability to John Billiot under the Longshoremen's and Harbor Workers' Compensation Act. *See* 33 U.S.C. § 908. We find that substantial evidence supports the ALJ's decision and therefore affirm.

## I. Facts

Pride Offshore (Pride) hired Mr. Billiot in the Spring of 1995 as a floor hand on a fixed platform drilling rig on the Outer Continental Shelf. Mr. Billiot suffered his alleged shoulder injury on July 14, 1995. He reported his injury to the supervisor three days later when the symptoms increased to numbness and tingling in his right shoulder and arm. After Billiot returned from his offshore duties, he visited Dr. St. Martin, a physician designated by Pride. Dr. St. Martin examined Billiot on two occasions immediately following Billiot's July offshore hitch. On August 8, 1995, he authorized Billiot to resume his full duties as a floor hand.

Billiot returned to the platform for his next offshore hitch on August 10, 1995. Billiot's work performance declined significantly between August and November 1995. On August 13, a Pride toolpusher fired Billiot for failing to perform his duties. Pride rehired Billiot in October, and Billiot continued to perform his full duties as a floor hand. On November 14, Pride demoted Billiot from floor hand to roustabout.

The continuing pain in his right shoulder, arm and neck

2

prompted Billiot to see a doctor of his own choice in December of 1995. Dr. Edmund Landry examined Billiot and discovered a nerve-stretch injury in Billiot's right shoulder. Although a toolpusher fired Billiot for the second time because of his appointment with Dr. Landry, Pride rehired Billiot in February of 1996 and assigned him to light duty jobs. Pride wanted Billiot to paint a building, but, after painting for three days, Billiot found the work extremely painful. Billiot complained to his foreman, but not to the personnel manager. The foreman did not offer Billiot alternative assignments. Billiot left work on February 15, 1996.

Dr. Landry examined Billiot a second time and discovered that Billiot suffered carpal tunnel syndrome from his July 14, 1995 injury. Pride and its insurer, Signal Mutual, retained their own doctor, who concurred with Dr. Landry's diagnosis. Dr. Landry concluded that Billiot could probably never return to his full duties as a floor hand, and would most likely be regulated to work requiring little physical exertion.

Billiot brought a claim for workers' compensation benefits under the Longshoremen and Harbor Workers' Compensation Act against Pride and Signal Mutual Insurance. The ALJ surmised that Billiot incurred a temporary total disability on November, 14, 1995, the date when he was unable to perform floor hand duties. The ALJ concluded that Billiot's reassignment to the painting job was not suited to his physical condition, and that Pride did not

3

offer Billiot any suitable alternative or present Billiot with other employment opportunities in the community until August 8, 1996. Beginning on August 8, 1996, the ALJ held that Billiot sustained a temporary partial disability. The ALJ then modified his original Decision and Order after both parties submitted motions for reconsideration. He awarded temporary partial disability based on an average of salaries from labor market surveys in 1996 and 1997. Petitioners Pride Offshore and Signal Mutual appealed to the Benefits Review Board, which affirmed the ALJ's decision.

Pride and Signal claim on appeal from the Board's decison that there was insubstantial evidence in the record to support the Board's and the ALJ's conclusions. They assert that (1) the court erred in finding that Pride did not offer suitable employment; (2) the court miscalculated Billiot's potential wage earning capacity; and (3) the court miscalculated Billiot's average weekly wage.[2]

---

[2]Billiot argues that this Court lacks jurisdiction because Pride and Signal Mutual filed an untimely appeal. He claims that the motion for reconsideration submitted to the ALJ pertained to clerical errors only and did not delay the period for filing appeals. There is no difference between motions for reconsideration of clerical matters and motions for reconsideration of substantive issues. *See Aetna Cas. & Surety Co. v. Director, Office of Worker's Compensation Programs, U.S. Dept. of Labor*, 97 F.3d 815, 820-21 (5th Cir. 1996). In fact, any notice of appeal filed before the ALJ resolves issues presented in a motion for reconsideration is nullified. *See id*. at 819 (citing 20 C.F.R. § 802.206(f)). Petitioners appeal is timely.

## II. Discussion

We review the Board's conclusions for errors of law, "making certain that the [Board] adhered to its statutory standard of review of factual determinations, that is whether the ALJ's findings of fact are supported by substantial evidence and consistent with the law." *New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031 (5th Cir. 1981). "Substantial evidence is evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Avondale Indus., Inc. v. Pulliam*, 137 F.3d 326, 328 (5th Cir. 1998). The ALJ's analysis of conflicting factual inferences and the ALJ's assessment of witness credibility controls on appeal if supported by the evidence and the law. *See Darby v. Ingalls Shipbuilding, Inc.*, 99 F.3d 685, 689 (5th Cir. 1996).

### A. Suitable Alternative Employment

An employer has the burden of establishing suitable alternative employment to rebut a claimant's prima facie case of total disability. *See P & M Crane Co. v. Hayes*, 930 F.2d 424, 430 (5th Cir. 1991). An employer can establish suitable alternative employment by demonstrating that there are job opportunities available within the claimant's capabilities or by giving the claimant a suitable job within the employer's workplace. *See id.; Darby*, 99 F.3d at 688. The employer is not required to offer the claimant a job or tell the claimant about

5

employment opportunities to satisfy this burden. *See Hayes*, 930 F.2d at 430. Rather, the employer need only show that there were suitable jobs reasonably available during the time in which a claimant alleges total disability. *See id.* "[I]f alternative jobs exist which the claimant could reasonably perform and secure had he diligently tried, the employer, after demonstrating the existence of such jobs has met his burden." *Turner*, 661 F.2d at 1043. The claimant must then demonstrate that despite diligent efforts, he could not find suitable employment. *See id.*

Pride and Signal Mutual contend that the ALJ erred by concluding that Pride did not offer suitable alternative employment before August 8, 1996. They specifically argue that the painting job given to Billiot was suitable and, in the alternative, that other jobs were available at Pride's facility. Substantial evidence exists to support the ALJ's determination that the painting job was not suitable to Billiot's injury. First, the ALJ concluded that Dr. Landry previously advised Billiot that he should not perform any work involving overhead activities. Second, Billiot testified that the hard hat he wore while painting aggravated his injury. He testified that painting caused him extreme pain and that he reported his condition to his foreman, who did not suggest any other alternative. The ALJ also chose to discredit the testimony of two Pride employees who stated that other light duty jobs were available to Billiot at

6

the Pride facility after his injury.  We decline to disturb the ALJ's credibility inferences.  *See Darby*, 99 F.3d at 688-89; *Mendoza v. Marine Personnel Co., Inc*., 46 F.3d 498, 500-01 (5th Cir. 1995).  Because the ALJ's conclusions are supported by substantial evidence and in accordance with the law, the Board's decision concerning suitable alternative employment is affirmed.[3]

### III. Billiot's Average Weekly Wage

Section 910(b) of the LHWCA requires the ALJ to assess the average weekly wage of employees in the same class who worked substantially the whole year in the same or similar employment. *See* 33 U.S.C. § 910(b).  Pride and Signal Mutual do not discount the ALJ's application of § 910(b), rather they argue that the ALJ erred in determining that Billiot was employed as a floor hand instead of a roustabout.  They claim that at the time of his injury, he was performing roustabout duties.  While the work that caused Billiot's injury may have been part of the general duties of a roustabout, he was hired as a floor hand.  He was also paid

---

[3]Pride and Signal Mutual claim that Billiot failed to diligently search for other employment at Pride's facility after his injury. This argument lacks merit because the burden never shifted back to Billiot once he established his prima facie case.  The petitioners must show that suitable alternative employment existed before Billiot was required to demonstrate diligence in pursuing other job opportunities. *See Roger's Terminal and Shipping Corp. v. Director, Office fo Worker's Compensation Programs, Dep't of Labor*, 784 F.2d 687, 691 (5th Cir. 1986).  "[F]ailure to present any evidence of job availability can support a determination of . . . total disability if the claimant is incapable of returning to his former job." *Id*.

floor hand wages.  Just because an employee performs a task outside his general job description does not mean that the employee no longer holds his previous position.  Although Pride demoted Billiot to a roustabout position on November 14, 1996, he worked the majority of his time with Pride as a floor hand.  The Board of Review correctly determined that substantial evidence supported the ALJ's conclusion that Billiot's average weekly wage should be calculated using the wages of floor hands instead of roustabouts.  *See LeBlanc v. Cooper/T. Smith Stevedoring, Inc.*, 130 F.3d 157, 161 (5th Cir. 1997); *Bourgeois v. Avondale Shipyards, Inc.*, 121 F.3d 219, 221 (5th Cir. 1997); *Harrison v. Todd Pacific Shipyards Corp.*, 21 BRBS 339 (1988).

## IV. Billiot's Earning Capacity

Finally, Pride and Signal Mutual contend that the ALJ did not properly consider a 1997 wage survey in calculating Billiot's earning capacity.  The ALJ averaged a 1996 labor market survey with a 1997 survey in his November 2, 1996 modification of his original order.  The petitioners contend that the ALJ should have used only the 1997 survey when reconsidering claimant's earning capacity.

"[A] disability award may be modified under [33 U.S.C. § 22] where there is a change in the employee's wage-earning capacity, even without any change in the employee's physical condition." *Metropolitan Stevedore Co. v. Rambo*, 515 U.S. 291, 301 (1995).

8

This Court gives deference to an ALJ's determination of a claimant's wage-earning capacity. *See Hole v. Miami Shipyards Corp.*, 640 F.2d 769, 773 (5th Cir. Unit B 1981) (deferring to the ALJ's decision to award claimant compensation on the basis of a one percent permanent partial disability in order to assess the full extent of the claimant's earning capacity in the future); *Pulliam*, 137 F.3d at 328 (holding that an ALJ may average alternate jobs to calculate a claimants wage-earning capacity). The ALJ, in its November 2, 1998 order, concluded that the jobs listed in petitioners' August 1997 labor survey averaged with the jobs set out in the August 1996 survey represented a comprehensive estimation of Billiot's wage-earning capacity. Section 922 of the LHWCA specifically allows for the modification of an original compensation award for the purpose of reassessing a claimant's wage-earning capacity. *See* 33 U.S.C. § 922; *Rambo*, 515 U.S. at 301. We find no reason to doubt the merits of the ALJ's determination. Because substantial evidence supports the ALJ's conclusions, we affirm the Benefits Review Board's decision.

AFFIRMED